Isaac Cohen, Appellee, v. Sioux City Traction Company, Appellant.

**Street railways:** INJURY TO PASSENGER: NEGLIGENCE: EVIDENCE.
1 Where the evidence concerning a street car accident, though conflicting, warranted a finding that plaintiff gave a stop signal which was recognized by the conductor and a purpose to stop the car was manifest, and with knowledge of this fact plaintiff with ordinary care was in the act of alighting, when by a sudden jerk of the car he lost his footing and was dragged some distance before the car came to a stop, a verdict of negligence on the part of the company should not be disturbed.

**Same:** INSTRUCTION. Where the evidence tended to show that it
2 was the usual custom for street cars to stop at street intersections only, so that the conductor might have understood a stop signal as indicating a desire to alight at the next street rather than at an intermediate point, the jury should have been instructed that defendant was not bound to anticipate that plaintiff would leave the car elsewhere than at the usual stopping place.

**Same:** NEGLIGENCE. Where a street car passenger indicates to the
3 conductor a desire to leave the car at a place other than the usual stopping place and the conductor understanding the re-

quest assents thereto, and the car having stopped or slowed down so that the passenger may with reasonable prudence attempt to alight but is injured in so doing by a sudden jerk of the car, the company is liable for negligence.

**Practice:** INFORMAL OR DEFECTIVE VERDICTS: CORRECTION. It is proper
4   to recall a jury to correct an informal or defective verdict where the same can be done promptly and without prejudice to the losing party; as where the jury returned both verdicts, one for plaintiff assessing his damages and the other for defendant, a recall and poll of the jury on the same day showed that the return of defendant's verdict was a mistake properly guarded defendant's rights, and his objection to the corrected verdict was rightly overruled.

*Appeal from Woodbury District Court.*—HON. WILLIAM HUTCHINSON, Judge.

TUESDAY, MARCH 9, 1909.

ACTION at law to recover damages for personal injury. Verdict and judgment for plaintiff, and defendant appeals.—*Reversed.*

*J. S. Lawrence,* for appellant.

*Jepson & Jepson* and *J. W. Hallam,* for appellee.

WEAVER, J.—The plaintiff alleges that, having entered one of the defendant's cars for the purpose of becoming a passenger thereon, another person standing upon the street called him to return, whereupon he signaled the conductor to stop the car (which had begun to move forward) and permit him to alight, and while in the act of alighting or preparing so to do the defendant's servants, knowing his peril, suddenly and negligently increased the speed of the car, throwing him to the ground in such manner that his arm was crushed under the wheels, and he was otherwise seriously injured. The defendant denies all of the allega-

tions of the petition and alleges that plaintiff was injured by reason of his own negligence.

The plaintiff's evidence tends to show that on the evening of July 7, 1906, at the corner of Fifth and Douglass streets in Sioux City, he boarded one of defendant's cars moving east along Fifth Street and in the direction of Pierce Street. The car was of the open or summer pattern, passengers entering their seats from the side over footboards provided for that purpose. Plaintiff took a seat near the middle of the car, but before it reached the alley at the middle of the block one Renstad, standing upon the street, called to plaintiff to come back. Responding to this call, plaintiff asserts that he arose, and, standing upon the footboard, supported himself by grasping the handhold or bar with one hand, and with the other gave the conductor, who was looking at him, the signal to stop. His version of what then occurred is stated in the abstract, as follows:

I was on the top board, and raised my hand for the conductor to stop. I saw the conductor at the time. He was ahead of me. I was standing on the running board and held with my left hand the brass bar, and with my right hand signaled for him to stop, and the conductor winked and motioned me this way (indicating). I said 'Yes,' and he blew the whistle, and the car slacked up, and I went down on the running board, on the lower board; yes, on the lower running board, and then he whistled twice, the conductor, and then the car gave a big move, you know, kind of a jerk, and then I fell down. I fell right down and hit right here (indicating). At the time of this forward move of the car I was standing to the east and faced to the east. I held on the car with my left hand. You see this, say, is east, I was standing or leaning this ways (indicating), holding on with my left hand for the bar with the handle. When I fell I fell right on the first running board, and my head hit right on the running board, and I got hurt right up here (indicating). I struck on the top running board. The scar over my eye

is where I struck. My feet was on the ground, and my body was on the running board, on both running boards; on one I was hanging with my left arm. I was hanging this way (indicating) on the top running board, and my feet was dragging on the ground. I fell right by the Lerch building. There was a pile of sand there. There was a pile of sand and then there was an alley. The pile was west from the alley, and the Lerch building is west of the alley. I think it was about twenty-five feet west of the alley that I fell, right by the sand pile. I do not know how long I remained in that position, but I got—well, I was unable to hold on and turned loose.

That he did fall from the car and received an injury necessitating the amputation of his arm is not controverted upon the trial. One or two other witnesses corroborate him in the statement that as he was in the act of alighting there was a jerk or increase of speed by the car, and that he fell, grasping the handrail or footboard, and in this position was dragged a distance estimated at from seventy-five to one hundred and fifteen feet before his hold was broken, and he passed under the wheels. The testimony on part of the defendant tends very strongly to show that no signal to stop was given, or that, if given, it was not seen by the conductor, and that plaintiff in attempting to leave the car while in motion fell and was injured without negligence on part of the conductor or motorman. The jury found for the plaintiff, and from the judgment rendered upon the verdict the defendant appeals.

I. The first exception argued by counsel is to the refusal of the trial court to direct a verdict for defendant because of the alleged insufficiency of the evidence to support the charge of negligence. As we have already indicated, the evidence upon this issue is in sharp conflict, and, while the number of witnesses preponderates in favor of defendant, the rule which requires the truth of such contention to be submitted to the jury is too elementary to re-

1. STREET RAILWAYS: injury to passenger: negligence: evidence.

quire argument or citation of authorities. Counsel's insistence that the testimony as to the dragging of plaintiff for a considerable distance after he fell, and while he was calling for help, is confined to a single witness, one Bunch, is not sustained by the record. The testimony of Bunch in this respect is corroborated to a material degree by that of the witnesses Mrs. Williams and A. Whitebook, and by the plaintiff himself. If the jury found, as it might have done, under the evidence, that plaintiff gave the conductor the stop signal, and the conductor recognized it and indicated a purpose to stop at that place as requested, and as plaintiff was, with the knowledge of the conductor, in the act of alighting, the speed of the car was suddenly increased, causing him to fall, and that after his fall he was dragged from seventy-five to one hundred and fifteen feet, crying aloud for help, before the car was brought to a stop, a conclusion of negligence drawn from such facts ought not to be disturbed by the court. There was therefore no error in overruling this ground of the motion for a new trial.

II.  The defendant submitted certain requests for instructions to the jury, among which was the following: "You are instructed that under the evidence in this case it was not the duty of the defendant or its conductor to anticipate that the plaintiff would leave the car at the time he attempted to do so, and if the plaintiff alighted, or attempted to alight, from the car in question before it reached the place at the street crossing of Pierce Street, where said cars ordinarily and usually stopped, pursuant to the usual and ordinary operation of defendant's street cars on the line and place in question, then the defendant was not guilty of any negligence in failing to anticipate that plaintiff would alight at the place where he attempted so to do." This request was denied, and no instruction was given by the court covering the point thus suggested. While the phraseology

2. SAME: instruction.

of the request is probably open to criticism and should have been modified, the central thought embodied therein, that the railway company was not bound to anticipate the attempt of the passenger to leave the car elsewhere than at its usual or regular stopping place, ought to have been stated to the jury in some form. The testimony tended to show that the regular stopping places for defendant's cars were at the street intersections, and the car in question, having passed Douglass Street, would not regularly stop again until it reached Pierce Street. Under such circumstances a stop signal given after the car had passed Douglass Street, without other circumstances indicating to the conductor a different intention on part of the passenger, would naturally and properly be interpreted as a request to stop at Pierce Street, and the defendant would not be chargeable with negligence for acting upon that assumption and failing to stop the car sooner. The error involved in refusing this instruction is in effect repeated or emphasized in the ninth paragraph of the court's charge, and for the reasons stated we hold the exception taken to said paragraph is well grounded.

In this holding we are not to be understood as saying that as a matter of law defendant could not have been negligent as charged in the petition, for if the plaintiff 3. SAME: negligence. by word or gesture indicated to the conductor a desire to leave the car at the point where they then were, and the conductor, understanding the request, indicated his assent thereto, and the car having stopped or slowed down to such a degree that plaintiff, acting as a reasonably prudent person, and with the knowledge of the conductor, was attempting to alight, and while so doing was thrown off by a sudden increase in the speed of the car, then there was negligence for which the company would be liable.

III. It appears from the record that, at the close of the trial, the arguments being completed, and the jury

having been instructed by the court, the parties in open

**4. Practice: informal or defective verdicts: correction.** court agreed to the return of a sealed verdict. With the written charge of the court the jury was given two blank forms of verdict, as follows: "Verdict No. 1. We, the jury find for the plaintiff, I. Cohen, and against the defendant the Sioux City Traction Company, and assess the amount of his recovery at $——— ———, Foreman. Verdict No. 2. We, the jury, find for the defendant, the Sioux City Traction Company. ——— , Foreman." After reaching an agreement during the evening of the same day, the jury signed and sealed its verdict and separated. On the following morning the verdict, being opened and read in court, was found to be in the following form: "Verdict No. 1. We, the jury, find for the plaintiff, I. Cohen, and against the defendant the Sioux City Traction Company, and assess the amount of his recovery at $2,500.00. [Signed] W. C. West, Foreman." And: "Verdict No. 2. We, the jury, find for the defendant, the Sioux City Traction Company. [Signed] W. C. West, Foreman." When this situation developed plaintiff moved the court to recall the jury to correct what counsel claimed to be an evident mistake or inadvertence, to which order and proceeding the defendant objected on various grounds and insisted that the verdict be treated by the court as one for the defendant. The court directed the jury to be reassembled at two o'clock of the afternoon of the same day, at which time all of the jurors constituting the panel of twelve appeared in the box, and the court directed the clerk to call the roll upon their verdict, to which and to each subsequent step in the proceedings the defendant objected. Responding to this call, each of the twelve jurors announced his verdict to be for the plaintiff. The court then asked the jury whether the signing of the second form of verdict was a mistake, and upon calling the roll each juror answered that it was a mistake. All objections by the

defendant were overruled, and the verdict was recorded as a verdict for the plaintiff, and upon these rulings error is assigned.

In our judgment the trial court did not exceed its power or abuse the discretion with which it is vested in such matters. It is true that the verdict was irregular in form, yet the irregularity was upon its face so evidently the result of inadvertence upon part of the jury or its foreman, that, in the absence of any showing of prejudice, we are not prepared to say that the court would have been chargeable with error had it treated the verdict as one for plaintiff, even without recalling the jury for further examination, though that is a question not here presented, and we need not pass upon it. See the opinion of this court in *Gillespie v. Ashford,* 125 Iowa, 729, where a case somewhat similar to the one now before us was under consideration and the authorities bearing thereon were collected. It is, we think, a common and proper practice, where informal or defective verdicts have been returned, to recall the jury for their correction, where the same can be done promptly or within a reasonable time, and verdicts thus corrected are permitted to stand, in the absence of any showing from which prejudice to the losing party may be inferred. In the case before us the trial court appears to have guarded the rights of the defendant in this respect with all due care, and the objection made to the reception of the verdict as corrected was properly overruled.

For the reasons stated in the second paragraph of this opinion, a new trial must be ordered, and for that purpose the judgment of the district court is *reversed.*