BANK OF HOLMES, Appellee, v. EDDIE THOMPSON et al., Appellants.

BILLS AND NOTES: Execution—Signing Without Reading. One who signs an instrument without reading it, when he has *capacity* to read, *opportunity* to read, and is in *no manner prevented* from reading, is bound. Under all ordinary circumstances, it is a jury question whether a party has been so circumvented as to excuse nonreading before signing.

*Appeal from Wright District Court.*—R. M. WRIGHT, Judge.

JANUARY 10, 1922.

ACTION on a promissory note in the sum of $2,000 executed by Anfin Weeks to the Bank of Holmes and indorsed severally by the defendants. Cause tried to the jury and verdict returned in favor of plaintiff and judgment entered accordingly. Defendants appeal.—*Affirmed.*

*Birdsall, McGrath & Archerd* and *Sylvester Flynn,* for appellants.

*C. J. Nagle* and *Price & Burnquist,* for appellee.

DE GRAFF, J.—Plaintiff bank is the payee and the defendants are accommodation indorsers on a promissory note dated July 10th, 1915 and due January 1st, 1916 in the sum of $2,000. The defendant-indorser, Eddie Thompson, denies that the signature

on the note is his signature. The other seven indorsers admit the genuineness of their signatures. Defendant Thompson in answer to plaintiff's petition also alleges that if the signature appearing on the back of said note as Eddie Thompson is in fact his signature, the same was obtained and procured by and through the fraudulent representations and deceit of the maker of said note, and he further avers that on or about the 10th day of July, 1915 the maker of said note came to his home and stated to him in substance that it was necessary to raise some money on outstanding bills and that he, the defendant, was indebted to him, the said Weeks, on account of goods purchased; that if the defendant was unable to make payment of the same at that time that he, the said Weeks, had an arrangement with the plaintiff Bank whereby if the defendant would O. K. his account by attaching his signature thereto, he, the said Weeks, could obtain credit thereon at the plaintiff bank; that said statement with reference to obtaining credit at the bank on said O. K'd account was false and untrue; that the defendant relying and believing said statements consented to and did agree to O. K. his account of merchandise purchased from the said Weeks; that said Weeks represented and stated to him that said paper was a statement of the defendant's account and that the defendant in attaching his signature thereto was merely O. K ing his account for the purpose of permitting said Weeks to obtain credit on the same and relying on said statement and believing same to be true did attach his signature to said paper.

Each of the other defendants, except Ulstad, filed separate answers containing in substance the same defense of fraud as pleaded by defendant Thompson. Evidence in support of these allegations was introduced by the defendants.

Defendant-indorser Ulstad admits the signing of the note as an indorser, but alleges in his answer that he signed the same through the representations of the plaintiff bank and the maker Weeks that the signatures of the other seven signers were genuine.

It appears that the maker, Anfin Weeks, during the years 1915 and 1916 was engaged in the general mercantile business at Holmes, Iowa, and did his banking business with the plaintiff bank. About the time the note was executed Weeks was in an

insolvent condition, but this fact was not known to the defendant-indorsers. His account at the appellee bank was overdrawn approximately $3,000, and the bank was insisting upon settlement. Weeks talked the matter over with the cashier and was advised by the latter to secure a note signed by a number of his friends for $2,000 and to make collections on merchandise accounts for the balance. The note was prepared in the bank. According to the testimony of Weeks he took the note and started to collect accounts and to secure the necessary indorsements. It is his claim that he told each of the defendants his purpose and that he mentioned the note specifically; that each of the defendants had the note in his possession when it was signed; that nothing prevented any indorser from reading it before indorsing it, and that it was indorsed by each of the defendants.

The material facts and circumstances of this case are in serious dispute and therefore present a jury question. Mere preponderance in the number of witnesses testifying to a certain fact does not justify the court in taking the case from the jury. *Cohen v. Sioux City Traction Co.*, 141 Iowa 469.

We have frequently held that the finding of the jury on disputed facts under proper instructions is final.

Error is predicated on certain instructions given by the trial court, and the correctness of these instructions determines this appeal.

The court correctly instructed the jury on the issue of fraud as pleaded by the defendants and as bearing upon this question the court further instructed the jury as follows:

"If you find that any one of the defendants in this case had capacity to read the instrument signed by him, and had an opportunity to do so, and that no fraud was practiced upon him to prevent him from reading it, but that they had full opportunity to read it before signing, and chose to rely upon what Weeks said to him about it, he is estopped by his own negligence from claiming that the same is not legal and binding."

The next instruction given by the court adopted the language of the approved instruction in *Shores-Mueller Co. v. Lonning*, 159 Iowa 95.

The subject-matter of the foregoing instructions is coexist-

ent and concurrent with the fraud pleaded. It is necessarily incidental thereto and formed a part of the transaction upon which defendants plead fraud. The court was in duty bound to give instructions in these particulars. This is not a case involving statutory estoppel, but is governed by the law in *Shores-Mueller Co. v. Lonning,* supra, and cases cited. In the *Lonning* case we said:

"As a rule, if a party is able to read and has a chance to do so, but omits this precaution because of his adversaries' statements, as to the contents of the instrument, his negligence will estop him from claiming that the instrument is not binding." See, also, *Christensen v. Harris,* 190 Iowa 256.

It is a question for the jury to determine whether or not a person is negligent in signing an instrument without reading it, if he can read, or in taking some other precaution to ascertain its contents. It is a fact question whether or not the defendant indorsers exercised that degree of prudence which the law requires of them; that is, ordinary care and prudence under all the circumstances of the case.

The record further discloses that the trial court presented quite fully, correctly, and concretely the defendants' theory of this case. We make this observation in reaching the conclusion that defendants suffered no prejudice by reason of the instructions given.

With respect to the defense pleaded by defendant Ulstad the finding of the jury that the seven preceding indorsements appearing on the note were *bona fide* and procured without fraud as defined in the instructions relieves his claim of the merit which it possessed as a matter of pleading and defense, and it likewise removes from our consideration his exceptions to the instructions bearing on the broader merits of the case and as affecting the rights of his codefendants.

The law of the case as defined by the court is in harmony with our prior decisions. Wherefore the judgment entered is— *Affirmed.*

STEVENS, C. J., WEAVER and PRESTON, JJ., concur.