*C. S. Hayden*, for the petitioner.
*H. Parker*, for the respondent.

---

GAMEWELL FIRE ALARM TELEGRAPH COMPANY *vs.* MOSES G. CRANE & another.

Suffolk.   January 23, 24, 1893. — October 27, 1893.

Present: FIELD, C. J., ALLEN, HOLMES, KNOWLTON, MORTON, LATHROP, & BARKER, JJ.

*Contract — Validity — Restraint of Trade — Equity.*

C., who had been a manufacturer of fire alarm and police telegraph apparatus for many years, entered into a contract with the G. Company, a corporation of which he was a director, to do all of its manufacturing, the corporation to have

the use of his patents for the term of ten years, and he not to compete with the corporation during that time. Five years later this contract was annulled by another contract between them, by which C. sold and conveyed to the corporation all his machinery, tools, draw cases, and other property used in or connected with his business of manufacturing for the corporation, including stock supplies partly manufactured, and raw material of every kind in any way pertaining to such business of manufacturing in his factory; and he agreed to transfer to the corporation exclusive rights under and control of all letters patent for fire alarm and police apparatus *only owned or controlled wholly or in part by him,* together with exclusive rights under and control of all improvements in the fire alarm and police apparatus only made by him up to the date of the contract; and he gave to the corporation the first option to purchase or obtain exclusive control for fire alarm and police purposes only under any and all letters patent, improvements applicable to such apparatus which might be made by him during the term of ten years next ensuing after the date of the agreement; and the contract also contained the following clause: "Said C. further agrees not to engage in the business of manufacturing or selling fire alarm or police telegraph machines and apparatus, and not to enter into competition with said G. Company, either directly or indirectly, for the period of ten years next ensuing *after the date of this agreement."* The consideration *to be paid was $30,000* in cash and notes, and such unwrought stock and machinery as was on hand at the date of the transfer and was not included in the schedule attached to the contract was also to be paid for at the cost price, to be fixed by appraisal. C. also agreed to let his factory to the corporation at a reasonable rent if the latter desired to hire it. The corporation paid C. about $47,000 as the consideration of the contract and the property conveyed. *Held,* upon a bill in equity by the corporation to enjoin C. and D., who was alleged to have associated himself with C., from violating the contract, that the clause of the contract above quoted was void, as being in restraint of trade; that C. should assign to the corporation the patents and inventions which he agreed to assign; and that the bill *should be dismissed with costs, as against D.*

BILL IN EQUITY, filed in the Superior Court on January 14, 1892, against Moses G. Crane and Frederick W. Cole, to enjoin the violation of a contract between the plaintiff and Crane, the material provisions of which, together with the facts, appear in the opinion.

The case was argued at the bar in January, 1893, and afterwards was submitted on the briefs to all the judges.

*M. Storey & S. L. Powers,* for the plaintiff.

*J. Q. A. Brackett & S. J. Elder,* for the defendants.

FIELD, C. J.   The plaintiff company and the defendant Crane have each appealed from the decree of the Superior Court. The principal question is whether the following stipulation in the contract between the plaintiff and Crane is void. The stipulation is, " Said Crane further agrees not to engage in the business of manufacturing or selling fire alarm or police telegraph

machines and apparatus, and not to enter into competition with said Gamewell Company, either directly or indirectly, for the period of ten years next ensuing after the date of this agreement." Crane had been a manufacturer of fire alarm and police telegraph apparatus from the year 1856 to 1886, when the contract was entered into which is the subject of this suit. From the year 1879 to January, 1891, he was a director of the plaintiff company. In 1881 he, or the firm of which he was a member, entered into a contract with the plaintiff company to do all of its manufacturing. He testified that the company "was to have the use of patents of mine for a term of ten years, and to give all its manufacturing to Moses G. Crane or Crane & Co., and they agreed not to compete with the Gamewell Company during that time." This is the contract which was annulled by the contract in suit. By the contract in suit Crane sold and conveyed to the company all his machinery, tools, draw cases, and other property used in or connected with his business of manufacturing for said company, including "stock supplies partly manufactured, and raw material of every kind in any way pertaining" to said business of manufacturing in his factory at Newton Highlands in Massachusetts, and he agreed to transfer to said company exclusive rights under and control of all letters patent for fire alarm and police apparatus only owned or controlled wholly or in part by him, together with exclusive rights under and control of all improvements in said fire alarm and police apparatus only made by him up to the date of the contract, and he gave to said company the "first option to purchase or obtain exclusive control for fire alarm and police purposes only under any and all letters patent, improvements applicable to such apparatus which may be made by said Crane during the term of ten years next ensuing after the date of this agreement," etc. The consideration to be paid was thirty thousand dollars in cash and notes, and in addition to this such unwrought stock, machinery, etc. as was on hand at the date of the transfer, and was not included in the schedule attached to the contract, was to be paid for at the "cost price, to be fixed by appraisal." Crane also agreed to let his factory to the company at a reasonable rent, if the company desired to hire it. The company actually paid Crane about forty-seven thousand

dollars, as the consideration of the contract and the property conveyed.

The plaintiff contends that the agreement "not to engage in the business of manufacturing or selling fire alarm or police telegraph machines and apparatus, and not to enter into competition with said Gamewell Company, either directly or indirectly, for the period of ten years," etc., is not void as being in restraint of trade; first, because it is an agreement pertaining to "property and business protected by patents"; secondly, because the restraint is only coextensive with the business sold, and is necessary to enable the company to enjoy fully what it has bought and paid for; and thirdly, because it relates to a single commodity not of prime necessity, and not a staple of commerce. See *Central Shade Roller Co.* v. *Cushman,* 143 Mass. 353; *Morse Twist Drill & Machine Co.* v. *Morse,* 103 Mass. 73; *Gloucester Isinglass & Glue Co.* v. *Russia Cement Co.* 154 Mass. 92.

There seems to be no reason why the defendant Crane should not assign the patents and inventions which he agreed to assign, if there are any, and no serious objection has been raised by the defendant on this part of the case. The defendant contends that he has a right to assist in forming a corporation, and to act as one of its officers, the business of which is to manufacture and sell fire alarm and police telegraph machines which are not made under any patents owned by the plaintiff or under any patents which he has agreed to assign to the plaintiff, or which the plaintiff has elected to purchase under the option given in the contract, even although by so doing he enters into competition with the plaintiff in its business. He in effect concedes that, so far as the business is protected by patents which he has assigned or agreed to assign, the restraint is valid. It appears that there are "a dozen or fifteen concerns in the United States engaged in a somewhat similar business." The defendant testified that he looked up the number of patents pertaining to this branch of the art in 1881, and that there were then about five hundred. The defendant contends that he ought to be able to use his own patents for subsequent improvements applicable to such apparatus if the plaintiff does not elect to purchase them; that he was previously a manufacturer of fire alarm and police telegraph apparatus, and not a seller thereof; that the good will which

attached to his business was that of a manufacturer who did not sell his manufactures in the market; and that it is against public policy that he should be restrained from exercising his peculiar skill anywhere in the United States or in the world for the period of ten years. The apparatus, as the defendant contends, which he has a right to manufacture and sell, is not secret machinery, and is not protected by any patents which the plaintiff owns or has a right to control, but is apparatus either not protected by patents at all, or by patents of his own or of other persons who may choose to employ the defendant.

The only ground, then, on which this restriction can be maintained is that it is reasonably necessary for the beneficial enjoyment by the plaintiff of the property it bought of the defendant, or, if this is not so, that the law in modern times does not regard such an agreement as against public policy. So far as we are aware, in every modern case in this Commonwealth except one where a contract in restraint of trade has been held valid, the restriction has been limited as to space. In *Taylor* v. *Blanchard*, 13 Allen, 370, the parties entered into a partnership for carrying on " the trade or business of manufacturing shoe-cutters," and it was provided that, " at whatever time the said copartnership shall be determined and ended," the defendant " shall not nor will at any time or times hereafter, either alone or jointly with, or as agent for, any person or persons whomsoever, set up, exercise, or carry on the said trade or business of manufacturing and selling shoe-cutters, at any place within the aforesaid Commonwealth of Massachusetts, and shall not nor will set up, make, or encourage any opposition to the said trade or business hereafter to be carried on " by the plaintiff. The manufacture of shoe-cutters was an art which could be carried on only by persons instructed in it, and the business was confined to the plaintiff and three other persons, but the court held the agreement void.

In *Bishop* v. *Palmer*, 146 Mass. 469, the plaintiff, being engaged in the manufacture and sale of bedquilts and comfortables, conveyed to the defendant his " entire business plant and enterprise as a manufacturer of and dealer in bedquilts and comfortables," together with the good will of the business and all the machinery, implements, and utensils used by him in said business, and agreed " that for and during the period of five years

from the date hereof he will not either directly or indirectly, in his own name or in the name of any other person or persons, continue in, carry on, or engage in the business of manufacturing or . dealing in bedquilts or comfortables, or of any business of which that may form any part." It was held that this was clearly illegal and void as being in restraint of trade, because not limited as to space. See also *Pierce* v. *Fuller*, 8 Mass. 223, 226; *Perkins* v. *Lyman*, 9 Mass. 522; *Stearns* v. *Barrett*, 1 Pick. 443; *Palmer* v. *Stebbins*, 3 Pick. 188; *Alger* v. *Thacher*, 19 Pick. 51; *Gilman* v. *Dwight*, 13 Gray, 356; *Angier* v. *Webber*, 14 Allen, 211; *Dean* v. *Emerson*, 102 Mass. 480; *Dwight* v. *Hamilton*, 113 Mass. 175; *Boutelle* v. *Smith*, 116 Mass. 111; *Ropes* v. *Upton*, 125 Mass. 258; *Handforth* v. *Jackson*, 150 Mass. 149.

The case of *Morse Twist Drill & Machine Co.* v. *Morse, ubi supra,* is the case referred to as an exception. The question arose upon demurrer. The agreement of the defendant was not only to transfer his patents, machinery, etc., and all improvments and inventions, but " that he will use his best efforts for the perfecting of improvements in the business and manufacture, and for such alterations and combinations as may tend to insure the success of the same and of the company," and that he will " do no act that may injure the company or its business, and that he will at no time aid, assist, or encourage in any manner any competition against the same." He also agreed " to serve as the superintendent of the company for three years," etc. The plaintiff company was formed by the defendant and others, and the defendant's business was transferred to it; he was a stockholder, and was made superintendent. The plaintiff agreed to employ the defendant for three years, and he was actually employed as superintendent up to the time he entered upon a competing business. The case seems to have been decided on the ground that the defendant had agreed to give to the plaintiff his exclusive services with reference to his mechanical skill and ingenuity in all improvements, alterations, and combinations which would tend to insure the success of the plaintiff in manufacturing twist drills and collets. The court say that " the same principle that enables a partner to bind himself to do nothing in competition with the business of the firm ought to apply to him." The opinion proceeds to consider the English cases where the restriction was

held not to extend beyond the good will of the business which was the subject of the sale, or was not greater than the interests of the vendee required, and was not unreasonable in view of all the circumstances. This doctrine in England has been carried very far. See *Badische Anilin und Soda Fabrik* v. *Schott*, [1892] 3 Ch. 447 ; *Mills* v. *Dunham*, [1891] 1 Ch. 576 ; *Davies* v. *Davies*, 36 Ch. D. 359. In this country the courts generally have not gone so far, but the old law has been a good deal modified in some jurisdictions in view of modern methods of doing business. See *Oregon Steam Navigation Co.* v. *Winsor*, 20 Wall. 64 ; *Fowle* v. *Park*, 131 U. S. 88 ; *Ellerman* v. *Chicago Junction Railways & Union Stockyards*, 4 Dick. 217 ; *Western Wooden-ware Association* v. *Starkey*, 84 Mich. 76 ; *Matthews* v. *Associated Press of New York*, 136 N. Y. 333 ; *Oliver* v. *Gilmore*, 52 Fed. Rep. 562 ; *Diamond Match Co.* v. *Roeber*, 106 N. Y. 473 ; *Whitney* v. *Slayton*, 40 Maine, 224.

In the present case the plaintiff did not buy the good will of a mercantile business, and the defendant Crane had no customers for fire alarm and police telegraph machines and apparatus. The plaintiff gets everything it bought if it gets the tangible property and the letters patent, and the improvements which the defendant Crane agreed to convey. The stipulation that Crane will not for ten years manufacture or sell fire alarm or police telegraph machines and apparatus, although under patents in which the plaintiff has no interest, or under patents which it has refused to buy, or under no patent at all, will tend to give the plaintiff a monopoly of the business. To exclude a person from manufacturing or selling anywhere in the United States, or in the world, machinery designed for certain purposes in which that person has acquired great skill, may operate to impair his means of earning a living.

The stipulation seems to us to be something more than is reasonably necessary to protect the plaintiff in the enjoyment of the property it bought, even if that should be adopted as the test, upon which we express no opinion. The principal object of the stipulation was, we think, to prevent the manufacture or sale by the defendant of any instruments which would serve the same purpose as those made and sold by the plaintiff, and thus to enable the plaintiff more completely to control the market.

Large cities and towns cannot well do without some kind of fire-alarm and police telegraph apparatus, and it is an article of necessity for such municipalities. We are of opinion that under our decisions the stipulation must be pronounced void as against public policy. If there is to be a change in the law, as heretofore many times declared by this court, we think it is for the Legislature to make it. See *Pacific Factor Co.* v. *Adler*, 90 Cal. 110; *Taylor* v. *Saurman*, 110 Penn. St. 3; *Richardson* v. *Buhl*, 77 Mich. 632; *Herreshoff* v. *Boutineau*, 17 R. I. 3; *Strait* v. *National Harrow Co.* 18 N. Y. Suppl. 224; *Anderson* v. *Jett*, 89 Ky. 375; *Urmston* v. *Whitelegg*, 63 L. T. (N. S.) 455; *Perls* v. *Saalfeld*, [1892] 2 Ch. 149.

For these reasons a majority of the court are of opinion that the decree against Crane should be substantially affirmed as to the assignment of patents and inventions, and as to costs, and should be reversed as to the rest. The decree in favor of Cole should be affirmed.*                                 *So ordered.*

---

* The decree was as follows: " And now this case came on to be heard, and was argued by counsel, and thereupon, upon consideration thereof, the court doth find that the defendant Crane's acts in forming the Municipal Fire Alarm and Police Telegraph Company in connection with others, in subscribing and paying for stock therein, in acting as the treasurer and director thereof, and as a stockholder, officer, and director aiding such corporation in competition with the plaintiff, are in violation of his agreement with the plaintiff, whereof a copy is attached to the bill, and it is thereupon ordered, adjudged, and decreed that the defendant Crane be enjoined, during the period covered by the said agreement, from competing directly or indirectly as officer, member, or employee of any corporation, or in any other manner, with the plaintiff, and from aiding or assisting by counsel, advice, or otherwise any corporation or any officer or member thereof, or any other person, in such competition; and that he be further enjoined from assigning any patent for any invention made by him, or any such invention or any interest in any such patent or invention relating to the apparatus in such agreement referred to, or any such patent or invention or interest therein of the kind described in the said agreement, except in accordance with the terms of the said agreement, and that the plaintiff recover its costs against the defendant Crane, and that as against the defendant Cole the plaintiff's bill be dismissed, with costs."