Argued February 10; affirmed March 7, 1939

# DONOHUE *v.* PETERSON

(87 P. (2d) 770)

Department 1.

*H. E. Slattery*, of Eugene (Slattery and Slattery,. of Eugene, on the brief), for appellant.

*Fred E. Smith*, of Eugene, for respondent.

KELLY, J. In his complaint plaintiff alleges:

"1. That the plaintiff now is and at all times herein expressed was a doctor of dental surgery duly authorized and licensed to practice dental surgery within the State of Oregon under the laws of the State of Oregon; and that he is now engaged in the practice of dental surgery within the City of Eugene, Lane County, Oregon.

2. That the defendant now is and at all times herein expressed was a doctor of dental surgery duly authorized and licensed to practice dental surgery within the State of Oregon under the laws of the State of Oregon."

The execution of the contract is alleged upon which the suit is based; and, as exhibit A, a copy of said contract is attached to and made a part of plaintiff's complaint. It is alleged   *   *   *

"that on or about April 14, 1933, the said parties hereto entered into the performance of the said contract and continued to act under and by virtue of the said contract until and including February 28, 1938, at which time the said contract was terminated by the fact that this plaintiff gave the defendant notice, as provided by

the terms of the said contract, that the same terminated on February 28, 1938; and the plaintiff further avers that at all times he duly performed his part of the said contract on his part."

We quote paragraph 5 of plaintiff's complaint:

"5. The plaintiff states that he is engaged in the practice of dentistry within the City of Eugene, Oregon, and that he has his dental parlors at number 960 Willamette Street in said city; and that he intends to continue the practice of dentistry in the said City of Eugene, Oregon; and that the said defendant has violated, is violating and intends to continue to violate the provision of the contract of which the said Exhibit 'A' is a copy that he shall not engage in the practice of dentistry in any manner in his name or otherwise in the City of Eugene, Oregon, until two years has elapsed after the termination of the said Exhibit 'A' in this, to-wit: That he has established a dental office at number 877 Willamette Street, Eugene, Oregon, and has advertised over his own name as follows, 'Changed Location to 877 Willamette—Dr. Peterson, Dentist'; and that the defendant, contrary to the terms of the said contract is practicing dentistry at said 877 Willamette Street in Eugene, Oregon; and that unless he is enjoined from so doing the said defendant will continue to practice dentistry in Eugene, Oregon, contrary to the terms of the contract of which the said Exhibit 'A' is a copy; and that the defendant has damaged this plaintiff by the violation of the said contract as above averred and will continue to damage the plaintiff by the continued violation of the said contract, unless that he is enjoined from so doing; and that the said defendant has damaged this plaintiff to the amount of One Hundred Dollars ($100.00) or more by violating the said contract; and the plaintiff further avers that he has no adequate remedy at law and his only relief is in equity."

In said contract, defendant is designated as the first party and plaintiff is called the second party.

We quote the provisions of said contract:

"(1) First party will rent and operate a dental office under his name in the Zumwalt Bldg., in the city of Eugene, Oregon, from second party who will sublet same until such time as this agreement shall terminate. This agreement shall be terminated when either party hereto shall give the other party notice of such intention and it shall terminate immediately.

(2) First party shall pay second party sixty percent of the gross income from such dental business as rent, said payments to be made daily. Gold scrap, when weighed up, to be counted as cash income.

(3) Second party shall furnish first party all necessary equipment, supplies, heat, electricity, water, laundry, advertising, laboratory service, etc., for the successful operation of said dental business, except gowns.

(4) Second party shall hire and pay the cashier-nurse for said office who shall take charge of all cash from the business and shall each day pay first party forty percent of the gross income from such business.

(5) First party shall not engage in the practice of dentistry in any manner under his name or otherwise in the city of Eugene, Lane Co., Oregon, until two years has elapsed after the termination of this agreement.

Signed at Eugene, Lane Co., Oregon, April 14, 1933."

It is obvious that the right to equitable relief, if any, cannot come exclusively from an agreement that has been terminated. We must look to the relationship which has existed between the parties and the effect upon plaintiff of the alleged continuance in practice at Eugene by defendant.

As we construe the contract, the relationship between the parties was that of lessor and lessee with a receiver, paid by the lessor, in charge of the finances accruing from the lessee's use of the leased property.

While there is an allegation to the effect that at all times mentioned plaintiff has been duly licensed to practice dentistry in Oregon, there is no allegation that he actually so practiced until the filing of the complaint. Paragraph 1 of the complaint states that plaintiff ''now is engaged in the practice in Eugene.'' Paragraph 5 thereof states that plaintiff ''is engaged in the practice of dentistry.'' in Eugene and intends to continue the practice. There is no allegation that any of the patients patronizing defendant ever patronized plaintiff or would patronize him if defendant were away. The case made by the allegations of the complaint differs from those wherein it is shown that dentists or physicians or lawyers associate themselves together for the practice of their profession and agree that if a dissolution occurs some one or more of them will not thereafter practice in the community where the firm's business is being conducted. In such cases, if equitable principles are violated, the court may enjoin the further violation thereof; but in the case at bar no equitable principle is applicable. The lessor terminated the lease, then engaged in the practice of dentistry and seeks to avoid competition. We think that the demurrer was properly sustained.

■ ''In a leading case decided by the Circuit Court of Appeals, Taft, J., later President of the United States and Chief Justice of the Supreme Court, thus summarized what the law permits:

'Covenants in partial restraint of trade are generally upheld as valid when they are agreements (1) by the seller of property or business not to compete with the buyer in such a way as to derogate from the value of the property or business sold; (2) by a retiring partner not to compete with the firm, (3) by a partner pending the partnership not to do anything to interfere, by competition or otherwise, with the business of the firm; (4) by the buyer of property not to use the same

in competition with the business retained by the seller, and (5) by an assistant, servant, or agent not to compete with his master or employer after the expiration of his time of service. Before such agreements are upheld, however, the court must find that the restraints attempted are reasonably necessary (1, 2 and 3) to the enjoyment by the buyer of the property, goodwill or interest in the partnership bought; or (4) to the legitimate ends of the existing partnership; or (5) to the prevention of possible injury to the business of the seller from use by the buyer of the thing sold; or (6) to protection from the danger of loss to the employer's business caused by the unjust use on the part of the employe of the confidential knowledge acquired in such business.

'It would be stating it too strongly to say that these five classes of covenants in restraint of trade include all of those upheld as valid at the common law; but it would certainly seem to follow from the tests laid down for determining the validity of such an agreement that no conventional restraint of trade can be enforced unless the covenant embodying it is merely ancillary to the main purpose of a lawful contract, and necessary to protect the covenantee in the enjoyment of the legitimate fruits of the contract, or to protect him from the dangers of an unjust use of those fruits by the other party.'

"There are occasional instances where a reasonable restraint is enforceable, although not ancillary to another transfer or promise. Thus, the owner of land may effectively contract to restrict the uses to which it shall be put." Vol. 5, Williston on Contracts, (Williston & Thompson Rev. Ed.) pp. 4584-5, § 1637.

In the American Law Institute's restatement of the law of contracts, we find the following outline of circumstances rendering an attempted restraint of trade illegal:

"A bargain in restraint of trade is illegal if the restraint is unreasonable." Vol. 2 Restatement of the Law of Contracts, p. 987, § 514.

"A restraint of trade is unreasonable, in the absence of statutory authorization or dominant social or economic justification, if it

(a) is greater than is required for the protection of the person for whose benefit the restraint is imposed, or

(b) imposes undue hardship upon the person restricted, or

(c) tends to create, or has for its purpose to create, a monopoly, or to control prices or to limit production artifically, or

(d) unreasonably restricts the alienation or use of anything that is a subject of property, or

(e) is based on a promise to refrain from competition and is not ancillary either to a contract for the transfer of goodwill or other subject of property or to an existing employment or contract of employment."
Vol. 2, Restatement of the Law of Contracts, pp. 988-989, § 515.

The contract in suit is not such as to come within either of the five classifications made by Mr. Taft and quoted by Professors Williston and Thompson. The promise upon which this suit is based is within the terms of the above quoted subdivision e of section 515 defining unreasonable restraints.

As stated, it was a lease by plaintiff to defendant of dental appliances, equipment and office space for a percentage of the gross income from defendant's business. There was no transfer of goodwill or other subject of property and no existing employment or contract of employment.

The Oregon cases cited by plaintiff are cases of sales. In one, a feed business was sold by plaintiff, who was engaged in a feed and livery business with an agreement that the purchaser would not engage in the livery business: *Seeck v. Jakel*, 71 Or. 35, 141 P. 211, L. R. A. 1915A, 679.

In another, an optical business was sold: *Thompson Optical Institute v. Thompson*, 119 Or. 252, 237 P. 965. And in the third, a tent and awning business was sold: *Columbia Tent & Awning Co. v. Thiele*, 135 Or. 511, 295 P. 501. In the latter two cases the vendor agreed not to continue in the business sold.

Plaintiff also refers to an article by former Dean Carpenter in Vol. 7, Oregon Law Review, p. 127, et seq. wherein it is said:

"Covenants in restraint of trade may include covenants not to compete which are ancillary (1) to the sale or lease of a business, (2) to the sale or lease of property, (3) to a contract of partnership or retirement from a partnership, and (4) to contracts of a servant or agent entering employment."

██ We think that one, who has leased property, may in order to protect the value to him of the use of the leased property impose a condition that the lessor will not during the terms of such lease engage in a business similar to that for which the lessee has procured the use of the leased premises; but in this case the lessor, who has cancelled the lease and deprived the lessee of the use of the leased property, is seeking to enjoin the lessee from practicing his profession in Eugene.

In the article mentioned Dean Carpenter says:

"The objections to restraint of trade, namely, that it divests the promisor of his means of earning a livelihood and of supporting himself and family, and that it deprives the community of the benefit of his services and the benefit which his competition might offer, are offset by the more important social interest involved in making goodwill of a business or other property vendible, or in protecting the covenantee in some proper interest covered by the contract." Page 137 ibid.

Later in the article by Dr. Carpenter, we find this statement:

"If there is no goodwill yet developed in a business, as in Gamewell Fire Alarm Co. v. Crane, [160 Mass. 50, 35 N. E. 98, 22 L. R. A. 673] where the seller had manufactured police telegraph apparatus exclusively for the buyer for twelve years, a covenant by the seller on making a sale of the business to the buyer not to compete would not be ancillary to or protect a goodwill sold, and it would therefore be invalid." Pages 145-6 ibid.

As heretofore stated, the complaint in the instant case fails to allege that at the time of the execution of the contract between plaintiff and defendant, plaintiff was engaged in the practice of dentistry or had established a dental business; or that the equipment, furniture and office space leased to defendant had ever at any time theretofore been used in the operation and conduct of a dental business.

In a footnote, Dr. Carpenter questions the applicability to the facts in *Gamewell Fire Alarm Co. v. Crane*, [160 Mass. 50, 35 N. E. 98, 22 L. R. A. 673, 39 Am. St. Rep. 458] of the rule requiring goodwill as a prerequisite to a valid covenant not to compete, saying that there was property sold and it was a type of property that might not be vendible to any great extent, unless the vendee was able to preclude himself from entering into the same business or competing with the buyer and this covenant might very well have been found to be ancillary to an interest purchased by the buyer, the failure to enforce which would impair the interest bought. This criticism does not challenge the rule; and, in the case at bar, there is no fact rendering the rule in the Gamewell-Crane case inapplicable.

Here, there is no property to which the covenant not to compete may attach. This is not a case where the defendant has sold plaintiff an established dental business with its equipment, instruments, furniture conveniences and had made a covenant not to compete. Neither is it a case where the goodwill of a business was involved.

In *Tuzik v. Lukes*, 293 Ill. App. 297, 12 N. E. (2d) 233, cited by plaintiff herein, plaintiff therein had purchased a bakery business and building from defendants. Then plaintiff purchased an adjacent vacant lot. The court held that the purchase of the vacant lot was to protect plaintiff's bakery business and afforded a sufficient consideration in the light of all the surrounding circumstances to support a covenant not to compete.

In that case it is said:

"A contract restricting one from engaging in a business is void and unenforceable unless it is incident to and in support of another contract or a sale by which the contractee acquires some interest in the business needing protection." *Tuzik v. Lukes,* supra, citing Elliott on Contracts, Vol. 2, p. 146, 147; *Union Trust and Savings Bank v. Kinloch Long Distance Telephone Co.,* 258 Ill. 202, 101 N. E. 535, 45 L. R. A. (N. S.) 465; Ann. Cas. 1914B, 258.

*Griffin v. Guy,* 172 Md. 510, 192 Atl. 359, also cited by plaintiff, is a case where both parties plaintiff and defendant were barbers. At all of the times mentioned in the complaint, both before and at the time of and after the execution of the contract, plaintiff had been and was engaged in the conduct of a business as a barber. The plaintiff employed the defendant to work for him in defendant's barber shop for three months, and paid the arrears in defendant's rent, for which defendant's barbering tools had been distrained. The

court held that under those circumstances a consideration was shown sufficient to enforce a covenant not to compete. The case at bar is not one of employer and employee and, as stated, there is no allegation that plaintiff was engaged in conducting any business before or at the time of the execution of the contract in suit.

The case of *Proctor v. Hansel*, 205 Iowa 542, 218 N. W. 255, 58 A. L. R. 153, is also cited by plaintiffs. The plaintiff in that case was an osteopathic physician, who had been in the practice of his profession in the city of Ames, Iowa, since 1899. The defendant was also an osteopathic physician, who had graduated in 1924. On December 31, 1925, the parties entered into a written agreement by which the plaintiff was to furnish suitable quarters and equipment for the practice of their profession. The office and equipment were used by both parties jointly and defendant paid plaintiff thirty per cent of the fees received by him. This was held to be a joint enterprise. In the opinion it is said:

"The arrangement gave the appellant [defendant] an opportunity to become acquainted with appellee's [plaintiff's] patients and to have the advantage of practicing in conjunction with an old and experienced practitioner."

In the case at bar there is nothing in the complaint to the effect that plaintiff had any patients or any practice while his contract with defendant was in effect.

For the foregoing reasons the decree of the circuit court is affirmed.

RAND, C. J., and ROSSMAN and BELT, JJ., concur.