[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 387 
[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 388 
The defendants moved under Rule 3:56-2 for summary judgment in their favor. The motion was based not alone on the allegations of the complaint but on two affidavits submitted by the defendants and one affidavit submitted by the plaintiffs and on the deposition of David Meyers, taken on the motion. With a single exception, later noted, there is no factual controversy between the parties. On a motion of this character the court is confined to those material facts which are either admitted or uncontroverted. *Page 389 
In disposing of this motion the court will disregard the lone fact on which there is some controversy between the parties. That fact, as will be herein presently shown, is altogether immaterial on the meritorious questions raised by the motion for summary judgment.
The suit is one in which the plaintiffs seek to enforce by injunction certain restrictive covenants contained in a lease made by the plaintiff Irving Investment Corporation to the two defendants under date of August 29, 1946, leasing for a term of five years beginning September 1, 1946, the entire building known as 147 Mulberry Street in the City of Newark and located on the southwest corner of that street and Edison Place. The lease recites that the demised premises are to be used and occupied only for the uses and purposes expressed in the thirty-first paragraph of the lease. That paragraph and the thirtieth paragraph are pertinent to the controversy. They read as follows:
"Thirtieth: It is the general intention of the parties hereto that the tenants are to have the right to use the demised premises for the business now conducted by them at No. 145 Mulberry Street, Newark, N.J. and are not to enter into competition with the business of the Newark Hardware Plumbing Supply Co. at 148 Mulberry Street, Newark, N.J., and whereas the lessees are now dealing with a few items which are also carried by the said Newark Hardware Plumbing Supply Co., and for the purpose of avoiding misunderstanding, it is agreed that lessees may sell the items set forth in Schedule `A' annexed hereto.
"Thirty-First: Lessees covenant and agree not to engage in same or similar line of business as the said Newark Hardware and Plumbing Supply Co. except as hereinto set forth, within a radius of one-eighth of a mile from demised premises, nor place signs advertising such a business within said area, so long as Newark Hardware Plumbing Supply Co. shall continue in said business at 148-50 Mulberry St., Newark, N.J., either directly or indirectly, as principals, agents, servants or otherwise."
It is admitted that the plaintiff Irving Investment Corporation is the sole owner of the leased building and that its co-plaintiff, Newark Hardware Plumbing Supply Company, has no property interest in the demise. The latter company, however, has for many years been engaged in the business *Page 390 
of selling hardware and plumbers' supplies at 148 Mulberry Street, in a building located on the easterly side of Mulberry Street, a short distance south of Edison Place. Depositions taken on the motion establish that the property occupied by the hardware and plumbing concern is owned personally by Mr. David Meyers, the president of the Irving Investment Corporation, that the two companies have several common stockholders but that neither company owns any of the capital stock of the other. The complaint recites that the lease in question, in so far as it refers to the Newark Hardware Plumbing Supply Company, was entered into for the benefit of that company. On that claim that company joins in this suit for injunctive relief and damages.
For over sixteen years the defendants' business has been conducted at 145 Mulberry Street, in a building located at the northwesterly corner of Mulberry Street and Edison Place. That business consists generally of the sale of electrical supplies. Before the lease in question was taken, and at all times since, the plumbing business on the easterly side of the street and the electrical supply business on the westerly side of the street were competitive in a number of articles. This fact is recognized in the lease itself, which contains a schedule of articles sold by both concerns and which the lessees (the defendants herein) were free to continue to sell despite the restrictions imposed by the lease.
The property at 145 Mulberry Street, which the defendants have occupied for many years for the transaction of their business, was held by them without a lease and as tenants from month to month. They were notified before August of 1946 by the owners of that building that the latter planned to sell the property at 145 and that before or at the time of such sale the defendants would be compelled to vacate the building. The defendants' good will attached to that business was considerable and they were concerned about having substitute premises if compelled to vacate the building then occupied by them. For that reason they sought and obtained from the Irving Investment Corporation the lease involved in this suit. The defendants' purpose was to transfer their *Page 391 
business from their present location at 145 to the newly-leased location at 147 and to make that transfer when compelled to move from their present location. That transfer was never made for the reason that the necessity to do so disappeared. Subsequent to taking the lease for the property at 147 Mulberry Street, the defendants purchased the property occupied by them at 145, and they have continued to own that property to the present time. The defendants claim that when they negotiated for the lease at 147 Mulberry Street they informed Mr. Meyers, the president of the lessor company, of their purpose to transfer their business from 145 to 147. This claim is denied in Meyers' reply affidavit, notwithstanding the fact that the lease itself in the thirtieth paragraph recites that the leased premises were to be used by the tenants "for the business now conducted by them at 145 Mulberry Street," and that Meyers himself, when previously examined under oath, admitted that during the negotiations for the lease he was told and understood that the lessees intended a transfer of their business from 145 to 147. Because of Mr. Meyers' self-contradiction it will on this motion be assumed that he was not informed by the defendants of the intended transfer. Whether he knew or did not know of the defendants' underlying purpose is altogether immaterial in considering the validity of the restrictions as here sought to be enforced. It is, however, important to remember that the defendants never used the demised building for the sale of any merchandise. The ground floor of that building was in August of 1946 used as a saloon and that use has remained unchanged. The two upper floors were then used for living quarters and are still used as such. Except for a period of two weeks in 1946 when the defendants used the upper floors for storing some cases, they have made no use of the demised premises except to collect the rent from their subtenants.
Plaintiffs charge that during the late summer or fall of 1948 the defendants commenced to violate and breach the restrictive covenants contained in the lease by selling from their stand at 145 Mulberry Street merchandise of a kind *Page 392 
competitive with the business of the Newark Hardware Plumbing Supply Company and, therefore, forbidden by the restrictive covenants of the lease. The plaintiffs seek not alone injunction but damages for the alleged breach.
The defendants attack the restrictive covenants on several grounds. They point out that the lease expressly refers to the thirty-first paragraph for a definition of the use of the demised premises and that an inspection of that paragraph shows that it contains no definition of the intended use but a mere declaration that the tenants are not to compete with the business of the Newark Hardware Plumbing Supply Company within a radius of one-eighth of a mile from the demised premises. The defendants argue that under the guise of defining the sanctioned use of the leased building the lessor failed to do so but, in turn, exacted a restraint applicable not to the demised premises but to a surrounding area. This criticism might perhaps have some weight if it were not for the presence of the thirtieth paragraph of the lease. With respect to that paragraph the defendants assert that it applies only to the demised premises and cannot be extended to the area described in the thirty-first paragraph. The lease is quite inaptly drawn and it is necessary to find the intention of the parties from all pertinent provisions contained in the lease. Paragraphs 30 and 31 should be read together. When so done the true intention of the parties clearly appears from the language expressed. It is to the effect that the tenants might use the demised building for the very business which they were then (the day the lease was given) conducting at 145 Mulberry Street, that with the exception of certain specified articles shown on the schedule attached to the lease they were not to compete with the business of the Newark Hardware Plumbing Supply Company, across the street, and were not so to compete with the last named company anywhere within a radius of one-eighth of a mile from
the demised premises. This restriction was not limited to the term of the demise but was stated to be operative as long as the Newark Hardware Plumbing Supply Company continued its business at 148 Mulberry Street, *Page 393 
whether such business was conducted directly or indirectly by the company as principal, agent, servant or otherwise. The questions raised by this motion are whether such a restrictive covenant is (1) valid in its entirety or (2) only partially so or (3) entirely void and unenforceable. Plaintiffs contend that the covenant is entirely valid while the defendants maintain that it is entirely void. As the court views the problem it resolves itself into the question whether a lessor owning real estate, but not otherwise engaged in business, may exact from its tenant a restrictive covenant intended to extend to an area beyond the demised premises, such restriction being taken not for the benefit of the covenantee but for another company in which the covenantee is not a stockholder and where the only relationship is that two companies (the covenantee and the intended beneficiary) have several stockholders in common. Counsel for the plaintiffs state in their brief that "no case exactly similar on these facts, to the case at bar (where the covenant runs from the tenant in favor of the landlord and a third person) has been found in this State," and they argue that the controlling principle is that the covenant must be ancillary to an undertaking and that in the case at bar the lease was a lawful undertaking and the covenant one of its incidents. Curiously enough neither side has furnished any authorities on the point last made or, what is more important, the question whether in exacting the tenant's restrictive covenant in a lease the lessor may preempt a territory greater than that involved in the demise. The court's own research has disclosed two out-of-state decisions on the latter question.
That a restrictive covenant to be enforceable must be ancillary to certain recognized types of transaction is too well settled to require citation of authorities. For the covenant merely to be incorporated in another document (here a lease) or to be taken in separate form but as an incident to a transaction, does not necessarily make it ancillary in the sense that it satisfies the rule. It must be ancillary in the broader sense that it isreasonably and necessarily related to the main purpose of a lawful transaction. The reasonableness of the restriction *Page 394 
in turn involves the extent of the restraint and the covenantee's need therefor. Before the decision of the Circuit Court of Appeals in the celebrated and much-cited case of United Statesv. Addyston Pipe Steel Co., 85 Fed. 271, there was much confusion and contrariety of view in the reported cases. Since 1898, when that case was decided, it has been uniformly regarded as a sound treatise and dependable guide-post in the law of covenants in restraint of trade. There Judge Taft (later Chief Justice of the United States Supreme Court) undertook to classify the various situations in which covenants in partial restraint of trade are generally upheld as valid. I shall here restate the five classes mentioned in the Addyston case and indicate how each is not applicable to the covenant at hand. The following are the five classes:
First Class: A covenant by the seller of property or business not to compete with the buyer in such a way as to derogate from the value of the property or business sold.
This is clearly inapplicable. In the case at bar we are not dealing with a vendor's covenant intended to protect the vendee in respect of the subject matter of the sale. Here no business or good will was sold.
Second Class: A covenant by a retiring partner not to compete with the firm.
This is inapplicable. No partnership is involved.
Third Class: A covenant by a partner pending the partnership not to do anything to interfere, by competition or otherwise, with the business of the firm.
This is also inapplicable.
Fourth Class: A covenant by the buyer of property not to use the same in competition with the business retained by the seller.
This is inapplicable for two reasons. There was no purchase of any property, nor did the covenantee retain any business requiring protection. *Page 395 
 Fifth Class: A covenant by an assistant, servant, or agent not to compete with his master or employer after the expiration of his time of service.
This is inapplicable. No employment is involved.
Judge Taft added a sixth class, intended to embrace all those situations which cannot properly be brought within any of the five stated classes. He said: "It would be stating it too strongly to say that these five classes of covenants in restraint of trade include all of those upheld as valid at the common law; but it would certainly seem to follow from the tests laid down for determining the validity of such an agreement that no conventional restraint of trade can be enforced unless the covenant embodying it is merely ancillary to the main purpose of a lawful contract, and necessary to protect the covenantee inthe enjoyment of the legitimate fruits of the contract, or toprotect him from the dangers of an unjust use of those fruits bythe other party." (Italics supplied.)
Invoking the rule last stated, the question for decision is simply this: Is this covenant merely ancillary to the main purpose of a lawful contract and is it necessary to protect the covenantee in the enjoyment of the legitimate fruits of the contract, or to protect him from the dangers of an unjust use of those fruits by the other party? The main purpose of the lease, perhaps the only purpose, was to give the tenant possession and the landlord its rent. Any covenant by the tenant relating to the use of the demised property itself would be ancillary to that main purpose. The like support cannot be found for the tenant's covenant not to engage in a stated business elsewhere than at the demised premises. No circumstances have here been shown to indicate that the lessor required the protection of such a covenant to assure to it "the enjoyment of the legitimate fruits of the contract (the rent)" or to protect the landlord from "the dangers of an unjust use of those fruits by the other party (the tenant)." If it be suggested that the tenants' operating an additional place of business in the forbidden area increases his risk of commercial misadventure and therefore may affect his capacity to pay rent, then, similarly, may it be said that a second place of *Page 396 
business in the forbidden area may increase the chance of profit and thereby improve the capacity to pay the stipulated rent. Nor does the court see how the continuance by the defendants of their long-established business at 145 Mulberry Street constitutes an "unjust use" of the fruits of the lease for the property at 147 Mulberry Street. In fact, no claim has been made in this case in behalf of the landlord that its rights or interests as the owner of the property are in any way jeopardized by the defendants' election to remain at their old stand and conduct there the business sought to be restrained. It is very obvious that the only purpose which the present suit seeks to serve is to lessen the competition between the Newark Hardware Plumbing Supply Company and the defendants, a purpose in no way involved in the relationship of landlord and tenant created by the lease in question.
There are two out-of-state decisions which merit mention. InDonohue v. Peterson, 87 Pac.2d 770 (decided in 1939), the Supreme Court of Oregon considered a tenant's restrictive covenant. The plaintiff, a dentist, leased his office and dental equipment to the defendant and exacted the latter's covenant that for two years after the termination of the lease the defendant would not practice dentistry in the Town of Eugene, Oregon. Upon the termination of the lease the defendant opened another office in town. The lower court sustained the defendant's demurrer and dismissed the bill. On appeal the Supreme Court pointed out that the covenant there involved did not fall within any of the six classes mentioned in the Addyston Pipe case, that there had not been a transfer of "good will" from landlord to tenant, and that therefore the covenant was not ancillary to a sale or a lease of good will and that the transaction involved only a lease of real estate and tangible personal property. The Supreme Court, in affirming the lower court, pointed out that in the circumstances there present the tenant, in order to protect the value to himself of the use of his leased property might have exacted a covenant from the landlord (himself a dentist) that the latter would not during the term of the lease engage in a *Page 397 
business similar to that for which the lessee took the leased premises but that the lessor could not exact such covenant.
In Stewart v. Stearns Culver Lumber Co., 48 So. 19, the plaintiff-lessee sued for breach of covenant contained in a lease. The lessor had covenanted that it would issue merchandise coupons to its employees payable only in merchandise in the plaintiff's store and not elsewhere, and that it would not set up its own commissary in its lumber camp. The Supreme Court of Florida pointed out that the covenant was not needed to protect the lessee in respect of the possession of the demised premises and that the covenant was illegal, despite the fact that it was ancillary to and contained in an otherwise lawful lease. The court, in denying liability, said: "But a contract not transferring a lawful business, trade, profession, or occupation actually engaged in * * * but containing an agreement to * * * refrain from the exercise of a natural right common to all to engage in a lawful business or occupation, * * * [is] opposed to public policy, and not enforceable. The fact that the agreementsare contained in and are ancillary to a contract of lease of astorehouse does not relieve them of their illegal effect * * *." (Italics supplied.)
Plaintiffs' counsel in their brief cite the case of Hoaglandv. Segur, 38 N.J.L. 230 (Sup. Ct. 1876). They state that in the cited case the defendant owned a lot in Dover on which he was erecting a building which he intended to use in the banking business, that the plaintiff purchased the lot from the defendant and covenanted not to engage in the banking business in Dover for a period of ten years, and that the covenant was held to be valid. Counsel argue that in the Hoagland case the covenant was ancillary to the sale of an interest in real estate and is therefore parallel to the case at bar, since in the latter the giving of a lease is essentially a conveyance of real estate for a limited term. The foregoing is an incomplete and therefore an inaccurate statement of the situation in the Hoagland case.
There the defendant had for a number of years been actively engaged in the banking business on the land which he subsequently conveyed to the plaintiff. *Page 398 
Examination of the original file in the Supreme Court shows that in connection with the banking business the defendant owned and used safes and other countinghouse equipment. While conducting his business he was building on the same lands a new structure where he intended to carry on the same business. When the new building was completed and the purchaser took possession of the new banking house, the defendant removed to another building in Dover, where, in breach of his covenant, he engaged in the banking business. It is obvious that a banking business conducted at a fixed site for a number of years acquires some good will. The transfer of that good will was implicit in the nature of the transaction, where the purchaser bought the building and the banking equipment and the seller covenanted to "withdraw from the business of banking, and not engage in the same, at any time, within ten years." The covenant in the Hoagland case was clearly supportable as a measure reasonably necessary to protect the purchaser in his acquisition of a business and good will.
The reasonableness of any restrictive covenant depends upon its own peculiar facts, but a test common to all such covenants is whether the covenantee has exacted a restraint not needed or greater than needed. Here the covenantee, which is nothing more than a real estate investment company, exacted a covenant which in no way protected its interest as the lessor of the demised premises. To the extent below indicated the covenant is held to be unnecessary, unreasonable and unenforceable.
There is another objection of substance to the restriction in so far as it extends beyond the demised premises. It is elementary law that a covenant in restraint of trade may not be made the subject of sale and purchase. It is this rule which underlies the requirement that the restriction must be ancillary to another transaction and reasonably necessary in relation thereto. To the extent that it is not so reasonably needed, the transaction becomes one of mere purchase of restraint and it matters not what consideration is furnished for that restraint. In Bond Electric Corp. v. Keller, *Page 399 113 N.J. Eq. 195, 166 A. 341, the defendant Keller, who had shortly before been complainant's vice-president and sales manager, took $3,000 for his covenant not to compete with the covenantee for two years. He breached his covenant. Vice-Chancellor Bigelow, after referring to what he calls the leading case, that of United States v. Addyston Pipe SteelCo., supra, denied the restraint and dismissed the bill. The point of the decision was that the covenant was not within any of the recognized classes of valid restrictive covenants. The case has also a deeper significance. The mere presence of a consideration for the covenant will not sustain it unless the covenant otherwise meets the test of the Addyston Pipe case. In the case at bar the lease grants to the tenants an option to buy the demised property. The president of the lessor company stated in his deposition that if it hadn't been for the restrictive covenant the lessor would not have granted that option of purchase. The court cannot see how this case differs in principle from Bond Electric Corp. v. Keller, supra. There the consideration was money; here an option of purchase. In each case the restraint itself was made the subject matter of sale and purchase. As such it is not valid or sustainable.
For the reasons already discussed it is held that the restrictive covenant here involved is invalid and unenforceable in so far as it applies to any area outside the demised premises themselves. It is also, in relation to such outside area, invalid for the further reason that neither plaintiff could reasonably exact such a covenant. The owner company retained no business which required the protection of the restraint. The Newark Hardware Plumbing Supply Company, not a party to the covenant but the intended beneficiary thereof, could acquire no rights under that covenant. There was no such property relationship between the two plaintiffs as would support the exaction of the covenant by the one for the benefit of the other. Neither company was a stockholder in the other company. True, there are a number of cases in our own State holding that a vendee of corporate stock may exact from his vendor a covenant not to compete with the *Page 400 
company whose stock is being purchased, but in each of those cases the covenantee had through stock ownership a direct property interest in the company sought to be protected. It is not so here. While the stockholders in the two companies are not identical there are several persons who hold stock in both companies. This is hardly enough. The defendants' brief furnishes an example which this court is willing to adopt. It states: "One might as well suggest that the Public Service Transportation Company, selling to Mr. X its vacant land in the rear of the Public Service building (in Newark) could exact from the purchaser an agreement not to compete with the Fidelity Union Trust Company in the banking business and seek to justify that by showing that there are many persons who own stock in both the Public Service and in the Fidelity Union." To allow such common stockholdings to support restrictive covenants would enable the company to exact restrictive covenants protective of many businesses in which it is not engaged and to which it has no property relationship. Such a result would tend greatly in the direction of destroying the barriers erected by law against unreasonable and, therefore, unlawful restraints of trade. It is held that the covenant is not enforceable in any respect at the suit of the Newark Hardware Plumbing Supply Company and is not enforceable by the lessor company in respect to the area beyond the demised premises.
The court does not, however, agree with the defendants' contention that because the restrictive covenant is invalid in the respects discussed, it is therefore invalid in its entirety. The argument is made that the restricted area is measured by a radius of one-eighth of a mile from the demised premises and therefore does not include the demised premises. The like argument was made in Fleckenstein Bros. Co. v. Fleckenstein,76 N.J.L. 613, 71 A. 265, where a vendor of a business covenanted that he would not engage in a competing business within 500 miles from the City of Jersey City. The Court of Errors and Appeals held that although literally the covenant did not include Jersey City within the protected area, nevertheless that territory was a part of the area from *Page 401 
which the vendor excluded himself and that the covenant should be read as binding the vendor not to engage in business "either in the city of Jersey City or within 500 miles from that city." I similarly read the covenant in the case at bar and hold that its true intention and meaning is that the interdicted business should not be conducted upon the demised premises or within one-eighth of a mile therefrom. In the Fleckenstein case the covenant was held good as to Jersey City but invalid as to the outside territory. Similarly here. The covenant is good as to the demised premises and is enforceable in a proper case at the suit of the lessor. A lessor of property has the undoubted right to impose upon his lessee any restrictions or limitations on use, providing the resulting use is not an illegal one. The lessor here could properly impose the restriction on the defendant-tenants providing it were confined to the use of the leased property. The lessor could do so arbitrarily or capriciously and if agreed to by the tenants it would be binding on the latter. In connection with such limited restriction there could be no inquiry as to reasonableness. In Hitchcock v.Anthony, 83 Fed. 779, the lessee of a dock, upon which he conducted the business of selling coal and fish, sold nearby real estate on which was situated another dock. The vendor exacted from the vendee a covenant not to engage in the coal or fish business for a term of years, or to do anything that would conflict with the said coal or fish business of the grantor. This covenant was attacked as preventing competition not alone on the property sold but in the entire town. The Circuit Court of Appeals, however, held that the circumstances were such as to justify a limitation of this restriction to the property sold to the defendant. The covenant, though invalid as to the area beyond the dock sold, was held good as to the dock itself. It is interesting to note that the opinion in that case was written by Judge Lurton and concurred in by Judge Taft, both of whom became later members of the United States Supreme Court.
Although it is held in the instant case that the restrictive covenant is valid in respect only of the demised premises, *Page 402 
summary judgment will be entered for the defendants. It is admitted that the defendants have not used the demised premises for any purpose forbidden by the covenants of the lease. They have therefore committed no wrong.
Present, on notice, order for summary judgment.