Argued December 9, 1977, reversed March 21, 1978

## HEMSTREET, *Respondent,*
### *v.*
## WARLICK, *Appellant.*
### (No. A 76-03-03166, SC 25216)
#### 576 P2d 1

Gary M. Bullock, Portland, argued the cause and filed briefs for appellant.

William E. Hurley of Bernard, Hurley, Hodges & Kneeland, Portland, argued the cause and filed a brief for respondent.

Before Tongue, Presiding Justice, Bryson and Linde, Justices, and Gillette, Justice Pro Tempore.

BRYSON, J.

## BRYSON, J.

Plaintiff brought this suit to enjoin defendant, a former partner of plaintiff, from operating a motel in violation of a noncompetition agreement. Plaintiff also sought an accounting for any profits defendant made in building and operating the motel. The trial court ordered defendant to dispose of his interest in the motel and further ordered him to account to plaintiff for his profits.[1] Defendant appeals. We review de novo.

The facts of the case are largely undisputed. From 1969 to 1972 plaintiff, defendant, and others formed numerous partnerships for the purpose of building, renting, and selling apartment buildings. Plaintiff planned and arranged the financing for the buildings and made disbursements; defendant and others actually built them. Defendant received small percentage ownership interests in the buildings, many of which were sold prior to the execution of the agreement here involved.

The evidence discloses that the parties operated in the following manner. The plaintiff, Jim E. Hemstreet, did business as an individual and in some instances did business under the name Jim E. Hemstreet, Incorporated. One of the parties would find a desirable piece of land for constructing an apartment building, later a motel. Mr. Hemstreet would provide the working capital, purchase the land, and arrange for the financing of the project. He then would enter into a partnership agreement with a builder such as defendant. Defendant-builder would arrange for all of the subcontracting and actual construction of the apartment building or motel. The plaintiff had prepared a separate partnership agreement for each apartment building or motel constructed. Plaintiff Hemstreet and members of his family would have the

---

[1] Plaintiff had also sought an injunction generally prohibiting defendant from violating the noncompetition agreement, but the final decree did not provide for such an injunction.

controlling interest in each partnership. The defendant-builder's interest would be shown by ownership of a percentage of the total project. This represented the defendant's payment for his investment in time and construction. A number of apartment buildings were completed and sold over a four-year period preceding November 21, 1972.

In November, 1972, the defendant was a partner with plaintiff in the International 205 Dunes Motel, sometimes referred to as Oregon City Dunes. The February 15, 1972, partnership agreement shows that the following parties owned Oregon City Dunes in the following proportions:

"50% JIM E. HEMSTREET
20% MARK S. HEMSTREET
5% HAROLD F. WARLICK
15% DAN SNIDER
5% JACK BAUNACH
5% WALTER K. HAYES"

There is evidence that the defendant also owned an interest with the plaintiff in another motel. Plaintiff testified:

"Q Do you have a recollection of whether Mr. Warlick was in another motel with you at the time other than just Oregon City?
"A Yes. Yes.
"Q Which one was he in?
"A The one on 82nd and Franklin."

However, there is no partnership agreement in evidence regarding this location or showing that there was a partnership agreement between plaintiff, defendant, and others regarding the 82nd and Franklin motel.

In November, 1972, the decision was made by the plaintiff, and acquiesced in by the defendant and others, to dissolve the partnership and each go their separate ways.

Following negotiations, the noncompetition agreement here involved was executed on November 21,

1972, effective November 1, 1972. As relevant to this case, the agreement provided that defendant would not

"* * * in any way or form or under the shelter of another or through any corporation, existing or contemplated, directly or indirectly participate in planning, promoting, operating or constructing any motel or hotel within a 12-mile radius from any hereinafter described location for a period of 12 years, i.e., November 1, 1984:

DUNES MOTEL—BARBUR
8905 S. W. 30th
Portland, Oregon 97219

DUNES MOTEL #3
3310 S. E. 82nd Avenue
Portland, Oregon 97266

EUGENE/SPRINGFIELD
INTERNATIONAL
3350 Gateway
Springfield, Oregon 97477

DUNES MOTEL—NEWPORT
536 S. W. Elizabeth Street
Newport, Oregon 97365

DUNES MOTEL—ROSEBURG
610 West Madrone
Roseburg, Oregon 97470

INTERNATIONAL MARION
DUNES HOTEL
200 Commercial Street, S. E.
Salem, Oregon 97301

PALM SPRINGS INTERNATIONAL HOTEL
1800 East Palm Canyon Drive
Palm Springs, California 92262

DUNES MOTEL—SANDY
1525 N. E. 37th Avenue
Portland, Oregon 97232
INTERNATIONAL
DUNES MOTEL
800 East Burnside
Portland, Oregon 97214

DUNES MOTEL—KENT
1711 West Meeker Street
Kent, Washington 98031

DUNES OCEAN FRONT RESORT
P. O. Box 954
Lincoln City, Oregon 97367

DUNES MOTEL—ASTORIA
288 West Marine Drive
Astoria, Oregon 97103

INTERNATIONAL
AIRPORT DUNES
3828 N. E. 82nd Avenue
Portland, Oregon

"2. In addition, Warlick * * * agree[s] for the same time to refrain in the same manner from competing with the proposed International Rockwood Dunes Motel, 19050 East Burnside, Portland, Oregon, and the proposed Dunes Motels in Stockton and Sacramento, California.

"* * * * *.

"5. The parties agree during the term of this agreement that if this non-competition agreement should become the subject of litigation and should any court of competent jurisdiction determine that either the time or the geographical standards are unreasonable, the parties agree to be bound to the greatest standard, both by time

[ 583 ]

and distance, and determined to be reasonble by said court. This provision is inserted as a precautionary measure for the benefit of all parties to the agreement, it being specifically agreed between each of the parties that the time of 12 years and the distance of 12 miles are both reasonable standards.

"* * * * *."

In 1975 defendant and another party built a motel in Wilsonville. Defendant owns one-sixth of this motel. Plaintiff's evidence shows that the motel in Wilsonville is less than .12 miles from the DUNES MOTEL—BARBUR, 8905 S. W. 30th, Portland, Oregon 97219, listed in the noncompetition agreement. Plaintiff has an interest in the DUNES MOTEL—BARBUR. The evidence also shows that DUNES MOTEL #3 (82nd and Franklin), 3310 S. E. 82nd Avenue, Portland, Oregon 97266, in which defendant had an interest, is more than 12 miles from the Wilsonville motel. The evidence shows that plaintiff was the controlling partner and the managing operator of each of the building units or partnerships. There is no evidence that the defendant owned any interest in DUNES MOTEL—BARBUR, and defendant had no partnership agreement with the plaintiff pertaining to that operation. In fact, there is no evidence that defendant owned any interest in the Dunes International motel chain, of which DUNES MOTEL—BARBUR is a part.

Plaintiff brought this suit upon learning of defendant's interest in the Wilsonville motel.

Defendant argues:

"The court erred in ordering specific performance of the restrictive covenant which was in restraint of trade, unrelated to the sale of goodwill, and unreasonable in operation."

We agree and reverse.

In *Donohue v. Peterson,* 161 Or 65, 71, 87 P2d 770 (1939), we quoted the following from Restatement of Contracts § 515 (1933):

"A restraint of trade is unreasonable, in the absence of statutory authorization or dominant social or economic justification, if it

"* * * * *.

"(e) is based on a promise to refrain from competition and is not ancillary either to a contract for the transfer of goodwill or other subject of property or to an existing employment or contract of employment. * * *"

And in *Eldridge et al v. Johnston,* 195 Or 379, 404-05, 245 P2d 239 (1952), we said, "Protection of the good will [of the business being sold] is the principal, if not the only, justification for [a covenant not to compete]."[2]

The flaw in the present noncompetition agreement is that defendant's promise not to compete with plaintiff's 15 separately owned motels, including defendant's promise not to compete with DUNES MOTEL— BARBUR, was wholly divorced from any transfer of goodwill or indeed the transfer of any interest *in the separate motels* from defendant to plaintiff. It had nothing to do with the protection of the goodwill of plaintiff's and defendant's former partnership because that partnership did not own the other motels, and particularly DUNES MOTEL—BARBUR, which is less than 12 miles from the Wilsonville motel in which defendant owns an interest.

It is stated in 6A Corbin on Contracts 55-57, § 1387 (1962):

"* * * A promise by a seller not to compete with the buyer is illegal and unenforceable insofar as the restraint is in excess of the good will purchased. The restraint is illegal if it covers territory greater in extent than that in which the seller had already developed business and good will. It is not made reasonable by the fact that the buyer afterwards extends his business into the larger territory *or by the fact that he himself was*

---

[2] We follow *Eldridge et al v. Johnston,* 195 Or 379, 245 P2d 239 (1952), in freely analogizing between the sale of a business and the departure of a partner. We also assume, for the purpose of discussion, that plaintiff in this case in fact kept the goodwill of his partnership with defendant.

*already doing business in such larger territory. Legality depends upon the extent of the business sold, not upon the extent of the buyer's business. * * *"* (Emphasis added; footnotes omitted.)

■ We hold that the noncompetition covenant cannot be enforced against defendant to prevent his ownership and activities in the Wilsonville motel.

■ This disposition of the case makes it unnecessary to discuss defendant's other assignments of error, or the possible application of ORS 646.725 to this case.[3]

We conclude that plaintiff failed to meet his burden of proof and that the allegations of the complaint were not sustained by the evidence and the case must be dismissed.

Reversed.

---

[3] ORS 646.725, enacted in 1975, provides:

"Every contract, combination in the form of trust or otherwise, or conspiracy in restraint of trade or commerce is declared to be illegal."

For a full discussion of the intent of the legislature and the effect of this statute, see Stephen L. Dunne, *Oregon's 'Little Sherman Act,'* 56 Or L Rev 331 (1977).

We also note that in deciding whether a statute is to be applied retroactively, the court will look to the probable legislative intent, absent some express indication of the legislature's intent. *Perkins v. Willamette Industries, Inc.,* 273 Or 566, 570-71, 542 P2d 473 (1975). As a rule of construction, a guide to ascertaining the legislative intent, it has been said that "statutes other than those which are procedural or remedial in nature are applied only prospectively in the absence of direction to the contrary." *Joseph v. Lowery,* 261 Or 545, 547, 495 P2d 273 (1972). *See Hall v. Northwest Outward Bound School,* 280 Or 655, 660, 572 P2d 1007 (1977), which holds the rule in *Joseph v. Lowery,* 261 Or 545, 495 P2d 273 (1972), inapplicable when the legislature expressly makes a statute apply retrospectively.