C. M. Proctor, Appellee, v. J. H. Hansel, Appellant.

March 6, 1928.

*John Y. Luke,* for appellant.

*Lee, Steinberg & Walsh,* for appellee.

FAVILLE, J.—The appellee is an osteopathic physician, and has been engaged in the practice of his profession in the city of Ames since 1899. The appellant is also an osteopathic physician, and a much younger man than the appellee. He graduated in 1924, and practiced his profession in Story City, about 12 miles distant from Ames. On the 31st of December, 1925, the parties entered into a written agreement, by which the appellee was to furnish suitable quarters and equipment for the practice of their profession, and the appellant was to pay to the appellee 30 per cent of all fees derived from the practice of his profession, under the agreement. It was also provided by the written instrument that it should continue and remain in force for a period of one year from and after January 1, 1926. The contract contained the following provision:

"It is further agreed by and between the parties hereto, and as part consideration for this agreement, that the said party of the second part will not compete with the said party of the first part or engage in the practice of osteopathy in the city of Ames, Iowa, in opposition to the said party of the first part, for a period of three years from and after the termination of this agreement, without the written consent of the said party of the first part."

The parties operated under the terms of this written instrument until on or about January 5, 1927, when the appellee called the appellant's attention to the above-cited clause of the contract, and informed him that the relations were at an end. The appellant thereupon moved from the appellee's offices, and opened an office for himself for the practice of his profession in the city of Ames, and continued such practice until injunction was issued in this case.

I. Appellant contends that the contract did not express the true agreement of the parties, and that he signed the same without knowing its contents, and without knowledge that it con-tained the clause in question. It appears that negotiations were had between the parties, relative to entering into a contract, and that the appellee had the contract prepared in duplicate. The appellant stopped at the appellee's office on or about the 31st day of December, 1925. He was, at the time, in a hurry, and on his way to the city of Des Moines, to attend his wife, who

was in a hospital there. Both contracts were signed, at the time, by the appellant, and both copies left with the appellee. There is no evidence sufficient to support a finding of fraud, deception, concealment, or overreaching, at the time of the signing of the instruments by the appellant. The appellant was able to read, and had ample opportunity to read the contract before he signed it, and it does not appear that any false statements were made in regard to the contents of the written instrument. Two copies were prepared, evidently one for each party; but the appellant not only neglected to take his copy with him, but did not seek to obtain it afterward. There is no showing in the record upon which the court could make a finding that the contract was not fairly entered into, or that all of its terms were not binding upon each of the parties thereto. *Glenn & Pryce v. Statler,* 42 Iowa 107; *Gulliher v. C., R. I. & P. R. Co.,* 59 Iowa 416; *Spring Garden Ins. Co. v. Lemmon,* 117 Iowa 691; *Shores-Mueller Co. v. Lonning,* 159 Iowa 95; *Bank of Holmes v. Thompson,* 192 Iowa 1032.

II. The appellant contends that the contract is against public policy, and should not be upheld and enforced by the court. The question of the legality of contracts involving employment, or the purchase of a business or a trade or profession, has frequently been before the courts. For an extensive review and collation of the authorities generally, see note 9 A. L. R. 1456, and note 20 A. L. R. 861.

In *Gossard Co. v. Crosby,* 132 Iowa 155, we considered a case involving the question of specific performance of a contract for personal services and the granting of an injunction to re-strain a servant from engaging in the service of another under a contract of employment. In said case we reviewed the authorities with regard to the question of the powers of a court of equity in enforcing a contract between an employer and an employee, but the case is not controlling in the case at bar. The instant case does not present a question between an employer and an employee, but rather, one where the arrangement between the parties was in the nature of a joint enterprise. The appellee, under the agreement in question, furnished the offices and equipment which were used by both parties jointly. The appellee was to receive a certain share of the earnings of the

appellant. The arrangement gave the appellant an opportunity to become acquainted with appellee's patients, and to have the advantage of practicing in conjunction with an old and experienced practitioner. It is undoubtedly the general rule that a court of equity will not lend itself to the specific performance of a contract that is, in and of itself, against public policy, or so unreasonable, unconscionable, or oppressive that it should not be enforced; nor will it often interfere in cases where there is an adequate and ample remedy at law, or where the plaintiff in the action does not come into court with clean hands. There is nothing in the terms and provisions of the contract in the case at bar that renders it against public policy, or so oppressive, unreasonable, or unconscionable that a court of equity should withhold its hand and refuse to uphold and enforce it. Contracts of this general character are of more or less frequency, and often occur in instances where a business or a professional practice, as of a lawyer, doctor, or dentist, is sold to another, under a contract that the seller will not re-engage in competition with the buyer within a limited area and for a limited period of time. Such a contract was before us in *Rowe v. Toon*, 185 Iowa 848, wherein an injunction was sought, to restrain a doctor from the practice of medicine within a certain county for a period of ten years. We therein reviewed the authorities, and held that a contract of this character which did not offend against public policy, and was not oppressive, unreasonable, or inequitable, would be enforced in a court of equity by the process of injunction. See, also, *Oates v. Leonard*, 191 Iowa 1004.

The Supreme Court of Minnesota, in the recent case of *Granger v. Craven*, 159 Minn. 296 (199 N. W. 10), considered a somewhat similar contract between two physicians, wherein one agreed not to engage in the practice of medicine and surgery in the city of Rochester, or within 20 miles thereof; and it was held that a court of equity would by injunction restrain the defendant from violation of such a contract. As bearing on the question, where somewhat similar contracts were involved, see *Haldeman v. Simonton*, 55 Iowa 144; *Glover v. Shirley*, 169 Mo. App. 637 (155 S. W. 878); *Mills v. Cleveland*, 87 Kan. 549 (125 Pac. 58); *Beatty v. Coble*, 142 Ind. 329 (41 N. E. 590); *Timmerman v. Dever*, 52 Mich. 34 (17 N. W. 230); *Tarry v. Johnston*, 114 Neb. 496 (208 N. W. 615); *McCurry v. Gibson*, 108

Ala. 451 (18 So. 806) ; *Freudenthal v. Espey,* 45 Colo. 488 (102 Pac. 280) ; *Marvel v. Jonah,* 83 N. J. Eq. 295 (90 Atl. 1004) ; *Wilkinson v. Colley;* 164 Pa. St. 35 (30 Atl. 286) ; *Threlkeld v. Steward,* 24 Okla. 403 (103 Pac. 630) ; *Styles v. Lyon,* 87 Conn. 23 (86 Atl. 564).

III. Appellant contends that the appellee was not entitled to relief in equity by way of injunction, and should have been remanded to a court of law, to recover damages, if any, under his contract. We think that there was a proper granting of injunctive relief in the instant case. The appellant, a young man and a comparatively inexperienced practitioner, with no previous residence in the city of Ames, was, under the contract, taken into the offices of the appellee, an old and established practitioner. It inevitably followed that the appellant became acquainted with the patients of the appellee, and was in such a situation that it is quite reasonable to expect that, in the course of time, some of them might prefer the services of the appellant. To permit the appellant to leave the offices of the appellee and establish a competing office in the same town, in direct derogation of the terms and provisions of the written contract, and require the appellee to resort to a court of law, to prove the specific damages that he might suffer by the loss of patients who sought the services of the appellant in preference to those of the appellee, and deny equitable relief, would be to place a very serious limitation upon the general broad and plenary powers that rest in a court of chancery. There can be no question of the power of a court of equity, in such a situation as is disclosed in the instant case, to enforce a contract by injunctive process, and not leave the injured party to the sole remedy of an action for damages in a court of law. Conceding that a court of equity has a discretion to withhold its aid where the party invoking its assistance has a plain, speedy, and adequate remedy at law, the instant case does not present a situation for the denial of relief by injunction.

Upon careful consideration of the entire case, we arrive at the conclusion that the decree of the trial court was correct, and it must be, and is,—*Affirmed.*

STEVENS, C. J., and EVANS, KINDIG, and WAGNER, JJ., concur.