GEORGE S. HAGGIN, Appellee, v. E. H. DERBY, Appellant.

No. 39988.

February 18, 1930.

Henry W. Wormley and Roseberry & Roseberry, for appellant.

Herbert S. Martin, for appellee.

Wagner, J.—During the period of time intervening between January 1, 1923, and August 21, 1924, the parties hereto, under the name "Haggin & Derby," were engaged as a  partnership in the hardware, furniture, and undertaking business at Kingsley. On the latter date, said partnership, by written contract, was mutually dissolved. Said written contract provides that E. H. Derby takes all the undertaking stock and accessories connected therewith, and that George S. Haggin takes all the furniture, hardware, rugs, window shades and fixtures, and balance of stock of all kinds; that Haggin pays Derby $1,200 for his equity in said partnership and business; that, in consideration of the $1,200 paid, Derby sells, assigns, and transfers to Haggin all his interest in the stock of the partnership, with the exception of the undertaking stock and accessories connected therewith, which latter, Derby

retains. The contract then provides for the collection of the book accounts and the payment of the partnership debts and the division of the remaining proceeds equally between the parties. The contract further provides:

"It is further agreed by and between both parties to this agreement that Geo. S. Haggin will not sell or offer for sale any undertaking goods or flowers or quote prices on same to anyone or in any way prejudice anyone against E. H. Derby or his business as long as E. H. Derby is in the undertaking business in Kingsley, Iowa. It is further agreed by and between both parties to this agreement that E. H. Derby will not sell or offer for sale any furniture, hardware, window shades, rugs (except wool rugs), or quote prices on same to anyone or in any way prejudice anyone against Geo. S. Haggin or his business as long as Geo. S. Haggin is in business in Kingsley, Iowa. Geo. S. Haggin and E. H. Derby further agree to help each other in the business life of each and send customers back and forth to each other and boost for each other's business while each are in business in Kingsley, Iowa. The undertaking stock of E. H. Derby may remain in the Haggin and Derby building without charge for not to exceed . . . days, but E. H. Derby assumes all risk from theft, fire or any cause whatever while same is in said building."

After the dissolution of the partnership, the plaintiff retained the stock of hardware and furniture within the building formerly occupied by the partnership, while the defendant removed the undertaking stock and accessories into a building across the street. Both parties have been continuously engaged in business at Kingsley since the time of the dissolution of the partnership. The uncontradicted evidence discloses that, since the 21st day of August, 1924, and prior to the time of trial, the defendant has, in many instances, taken orders for and sold furniture at retail, and that, at the time of trial, he had articles of furniture among his stock in his place of business.

At the close of plaintiff's evidence, the defendant moved for a judgment in his favor, and for a dismissal of plaintiff's petition. This motion was overruled. No evidence was intro-

 duced by the defendant. This being an equitable action, the making of the motion by the defendant is tantamount to an announcement by him that he rests his case. See *Pickler v. Lanphere*, 209 Iowa 910; *Murphy v. Hahn*, 208 Iowa 698; *Vogt v. Vogt*, 208 Iowa 1329; *Matthews v. Quaintance*, 204 Iowa 520; *Dolan v. Newberry*, 200 Iowa 511; *Brewster v. Brewster*, 194 Iowa 803. The trial court in the decree enjoined the defendant from selling or offering for sale, directly or indirectly, any furniture, hardware, window shades and fixtures, rugs (except wool rugs), and from quoting prices on the same to anyone within the town of Kingsley, Iowa, or the trade territory adjacent thereto, and enjoined the defendant from engaging in business, directly or indirectly, as a retail dealer in such merchandise in the town of Kingsley, Iowa, during such time as the plaintiff may be engaged in such business in said town.

The appellant contends that it is not shown by the record that the appellee has been and is engaged in the furniture business at Kingsley. It is apparent that, unless the record so shows, the appellee is not entitled to an injunction; for in that event, he could not be injured by a noncompeting business. This question presented by the appellant is one of fact. We have read the record with care, and it is clearly shown thereby that, upon the appellant's removal of the undertaking stock and accessories from the building previously occupied by the partnership, the appellee continued in the occupancy of said building with his stock of hardware and furniture until the removal therefrom to another building in said town in July, 1927, and that, during all the time since the dissolution of the partnership, he has been continuously engaged in said town in "the same line of business,"—the hardware and furniture business; that he endeavored, in a peaceable manner, to have the appellant desist from an infringement upon the contract rights of the appellee, but without avail; that, as a last resort, he informed the defendant that he would resort to an action to protect his rights, if the appellant did not abide by the written agreement, and was met with the response, "That agreement does not amount to a snap of your fingers." The cross-examination of the appellee, as a witness, relied upon by the appellant as showing that the appellee is not engaged in the furniture business, fails

to negative the affirmative testimony and the inferences to be drawn therefrom, given by the appellee on direct examination, that he has been and is so engaged. Therefore, on this proposition of fact, we find against the appellant.

The next proposition presented by the appellant is that the restraint placed upon the appellant by the terms of the written contract is unlimited as to place or territory, and "virtually unlimited as to time," and therefore unreasonable and unenforcible. These contentions involve a construction of the contract, which is hereinafter considered.

It is a well recognized rule of law that "good will," which is always incident to some particular place, name, property, or business to which it inseparably adheres, can be sold, assigned, or otherwise transferred in connection with a transfer of the thing to which it is incident, and that, if the property, business, or rights to which "good will" adheres are sold or otherwise transferred, the inclusion of "good will" may be implied from the facts and circumstances in connection with the transaction. See 28 Corpus Juris 738; *Miller v. Eller,* 192 Iowa 147; *Hedge, Elliott & Co. v. Lowe,* 47 Iowa 137. In *Miller v. Eller,* supra, it is aptly stated:

"The good will of a business or a profession may be the subject of bargain and sale, when connected with any specific stock in trade or with some valuable secret of trade or with a well established stand for business or with the practice of a profession."

In *Swigert & Howard v. Tilden,* 121 Iowa 650, this court, in discussing the question as to what limitations in restraint of trade as to time and place are reasonable and enforcible, declared:

"In giving application to the present-day doctrine, it has been said that the true test is whether the restraint is such only as to afford a fair protection to the interests of the party in favor of whom it is given, and not so large as to interfere with the interests of the public. And the restriction must be reasonable, not oppressive, or out of proportion to the benefits which the vendee may, in reason, expect to flow from the restrictive features of the contract. In *Hubbard v. Miller,* 27 Mich. 15

(15 Am. Rep. 153), it is said: 'If, considered with reference to the situation, business, and objects of the parties, and in the light of all the surrounding circumstances with reference to which the contract was made, the restraint contracted for appears to have been for a just and honest purpose, for the protection of the legitimate interests of the party in whose favor it is imposed, reasonable as between them, and not specially injurious to the public, the restraint will be held valid.' And this language is quoted approvingly in *Hedge, Elliott & Co. v. Lowe*, supra [47 Iowa 137]. Now whether a contract is reasonable in respect of the length of time during which the restriction is to run, and in respect of the scope of territory which is to be covered thereby, as applied to a case like the one before us, it would seem that the fair and full protection of the business and good will which the vendee has purchased and paid for may well be accepted as the test. Certainly the restriction ought not to be wider in the scope of its operation, and there can be no good reason for confining it to any narrower limits. It follows naturally that each case must be governed in the main by its own facts.''

It is therefore manifest that the questions for our determination are: Is the restriction against the defendant's selling, or offering for sale, any furniture, etc., reasonable in respect to the length of time during which the restriction is to run and in respect to the scope of territory which is to be covered thereby? Is the restraint provided for in the contract such only as to afford a fair protection of the interests of the appellee, or is it out of proportion to the benefits which the appellee may in reason expect to flow from the restrictive features of the contract?

''The general rule is that, where a contract by which a person covenants not to engage in or carry on a particular business is limited as to territory and is reasonable and proper in other respects, the fact that the duration of the restriction is unlimited will not render the contract invalid.'' 6 Ruling Case Law 799.

There can be no question that the restriction as to time in the aforesaid contract is limited to the period during which the appellee is engaged in the furniture business in Kingsley. There-

fore, the covenant as to time is not unlimited, and in this respect must be construed as reasonable.

If the negative covenant not to sell or offer to sell any furniture, etc., is unlimited as to place, then said covenant is out of proportion to the benefits which the appellee might in reason expect to flow therefrom. The determination of this question involves a construction of the contract. It must be admitted that the contract is not skillfully drawn, and does not bear the characteristics of technical legal precision. It is not free from ambiguity, and therefore presents the question of construction as to its meaning. The rule of primary importance in the interpretation of contracts is that the court must, if possible, ascertain and give effect to the mutual intention of the parties, so far as that may be done without contravention of legal principles. 13 Corpus Juris 521. It is also a well recognized rule in the construction of contracts that the instrument must be construed as a whole, and that individual clauses and particular words must be considered in connection with the rest of the contract, and that all parts of the writing and every word in it will, if possible, be given effect. 13 Corpus Juris 525. Another well recognized rule of construction of contracts is that it is the duty of the court to place itself, as nearly as may be, in the situation of the parties at the time of the making of the contract, so as to view the circumstances as the parties viewed them. The court should consider the nature of the agreement itself, together with all the facts and circumstances leading up to and attending its execution, the relation and condition of the parties, the nature and situation of the subject-matter, and the apparent purpose of making the contract. 13 Corpus Juris 542. In dealing with the subject now under consideration, the author in 6 Ruling Case Law 798 aptly states:

"In ascertaining the intention of the parties, the court will look to the whole subject-matter of the contract, the situation of the parties, the nature and extent of the business, the purpose to be accomplished by the restriction, and all the surrounding circumstances to which the parties must be supposed to have referred in making it. If, construed in the light of these surrounding facts and circumstances, the covenant is limited in territory to that reasonably necessary to the protection of the purchaser, it will be sustained."

These rules of construction being borne in mind, is the negative covenant by the defendant not to sell or offer for sale any furniture, etc., unlimited as to place or territory? We answer in the negative. Prior to the date of the contract, the parties had been engaged as a partnership in the hardware, furniture, and undertaking business at Kingsley. The contract was for the dissolution of said partnership. By its terms, the defendant took the undertaking stock and accessories, and the plaintiff the hardware and furniture stock. It was clearly the intent of the parties that the appellant should continue the undertaking business at Kingsley, and the appellee the hardware and furniture business at said place; that the appellant should have the "good will" of the former partnership as an incident to his undertaking business, and that the appellee should have the "good will" of said firm as an incident to the hardware and furniture business. By next to the last clause of said contract, each party agreed "to help each other in the business life of each, and send customers back and forth to each other and boost for each other's business, while each are in business in Kingsley, Iowa." The parties clearly contemplated that the appellant should continue the undertaking business, and the appellee the hardware and furniture business, both at Kingsley. When we take into consideration the entire contract and the surrounding facts and circumstances at the time of the transaction, and what they desired to accomplish, it was clearly the intent of the parties, and so expressed in the contract, that the appellee would not sell or offer for sale at Kingsley any undertaking goods, etc., as long as the appellant was engaged in the undertaking business at said place, and that the appellant would not sell or offer for sale any furniture, etc., at Kingsley, as long as the appellee was engaged in the hardware and furniture business at said place,—in short, that neither was to engage in the business of the other at Kingsley as long as that other was there engaged in the business. Neither could carry out the terms and spirit of the contract in sending customers to the other if both were engaged in the same business at the same place. It is obvious that the restriction or restraint placed upon each as to place or territory is Kingsley, Iowa, and as to time, as long as the other was engaged in the particular business which was separated from the whole of the business of the

partnership by the dissolution thereof. This being true, the restraint provided for in the contract is such only as to afford a fair protection to the interests of the appellee, and the same is reasonable, within the meaning of the law, and enforcible. See *Swigert & Howard v. Tilden,* 121 Iowa 650; *Rowe v. Toon,* 185 Iowa 848; *Miller v. Eller,* 192 Iowa 147; *Hedge, Elliott & Co. v. Lowe,* 47 Iowa 137; *Proctor v. Hansel,* 205 Iowa 542; *Cole v. Edwards,* 93 Iowa 477; *Oates v. Leonard,* 191 Iowa 1004; *Roush v. Gesman Brothers & Grant,* 126 Iowa 493; *Sauser v. Kearney,* 147 Iowa 335.

That injunction is a proper remedy in a case of this character, see *Proctor v. Hansel,* 205 Iowa 542; *Rowe v. Toon,* 185 Iowa 848; *Cole v. Edwards,* 93 Iowa 477.

The appellant complains because the trial court enjoined the appellant from selling or offering for sale any furniture, etc., not only within the town of Kingsley, Iowa, *but also within*  *the trade territory adjacent thereto.* The town of Kingsley is shown to have a population of about 1,200. The court was justified in making the injunction include the trade territory adjacent to the town. See *Cole v. Edwards,* 93 Iowa 477.

It appears that, after the time of the execution of the contract, the appellee sold to the appellant what was left of his stock of "floor covering," and gave his consent to the latter's dealing in said commodity. Thus it is obvious that the appellee released his rights under the contract as to said commodity. There is no exception as to "floor covering" in the decree. The decree should be modified in this respect, and as thus modified, the judgment and decree of the trial court is hereby affirmed. —*Modified and affirmed.*

MORLING, C. J., and STEVENS, DE GRAFF, and ALBERT, JJ., concur.

KINDIG, J., dissents as to that portion of the foregoing opinion which holds that the court was justified in making the injunction include the trade territory adjacent to the town.