Michael Jon SUTTON, Plaintiff–
Appellee,

v.

IOWA TRENCHLESS, L.C.,
Defendant–Appellant.

No. 10–2114.

Court of Appeals of Iowa.

Nov. 23, 2011.

Edmund J. Sease and Jeffrey D. Harty of McKee, Voorhess & Sease, P.L.C., Des Moines, for appellant.

Matthew J. Hemphill of Bergkamp & Hemphill, P.C., Adel, for appellee.

Heard by SACKETT, C.J., and VAITHESWARAN and TABOR, JJ.

SACKETT, C.J.

Iowa Trenchless, L.C. appeals the district court's decision granting declaratory relief from a covenant not to compete to Michael Sutton, a former owner and employee of Iowa Trenchless. Iowa Trenchless contends the district court erred in applying the standards governing the reasonableness of an employer-employee covenant not to compete to this case, which involves a business owner's sale of his interest. Iowa Trenchless asks that we adopt a less stringent review and grant more deference to covenants not to compete between owners, which are ancillary to the sale of a business. It contends if the appropriate standard of review was applied in this case, the covenant not to compete would be found enforceable. In addition, Iowa Trenchless asserts the district court erred in denying its breach-of-contract counterclaim against Sutton. We reverse and remand.

**I. BACKGROUND AND PROCEEDINGS.** Iowa Trenchless was formed in November of 2002 by Michael Sutton, Jason Clark, and Clark's father. Sutton and Clark each contributed $33,000 to the company, received a thirty percent interest, and were the working partners of the company as they both had prior experience with trenchless construction. Clark's father contributed $44,000 to the company, received a forty percent interest, and was mainly a non-working advisor and financial partner.

The purpose of the company was to engage in trenchless boring where pipe and cable could be laid underground without the need to dig open pits. The business plan for the company provided for Clark to manage the office work including networking to find jobs, bidding new work, and managing the finances. Sutton was responsible for the equipment maintenance, employee safety, and field supervision. While Clark would initially bid the work, Sutton was most often on site during the construction project.

In the summer of 2005, Sutton tired of the travel and sought to sell his shares in the company to Clark and Clark's father, who both tried to dissuade Sutton from leaving the company. The company was approximately two and one-half years old. It had just taken on more debt in order to construct a shop to store and work on equipment, and had purchased land and new equipment. When Sutton insisted on selling his shares, Sutton and Clark settled on a price of $200,000.

A purchase agreement was drawn up by the attorney for the company and provided that approximately $141,000 of the purchase price was for Sutton's membership units and capital account, and approximately $59,000 was for the goodwill of the company and a non-compete agreement. The covenant not to compete stated,

I, Michael Jon Sutton, will not, without the express written approval of Iowa Trenchless, L.C., compete with Iowa Trenchless, L.C. for a period of seven (7) years from the date of this agreement within a three hundred fifty mile (350) mile radius of Des Moines, Iowa, directly or indirectly, solicit, offer to provide, or provide any services similar to those Iowa Trenchless, L.C. has offered its customers during the last year, or work for or become associated with any of Iowa Trenchless, L.C.'s competitors as an employee, independent contractor, officer, director, investor, or in any other capacity involving trenchless methods, such as, but not limited to, auger boring, utility tunneling, micro tunneling, and sliplining.

During the term of this non-compete, I, Michael Jon Sutton, will not, without the express written approval of Iowa Trenchless, L.C., for the purpose of doing business, have contact with any customer or potential customer with whom I had contact while associated either as a member or employee of Iowa Trenchless, L.C.

I, Michael Jon Sutton, will not during the term of this non-compete agreement, directly or indirectly solicit any of Iowa Trenchless, L.C.'s employees or independent contractors, for the purpose of hiring them or inducing them to leave their position with Iowa Trenchless, L.C.

Sutton had the contract reviewed by an attorney and requested Clark and his father sign a personal guarantee for the $200,000 payment, which was done. Sutton, however, maintains that he did not have the ability to negotiate the terms of the covenant not to compete. Sutton states he did discuss the agreement with his attorney and tried to negotiate a five-year term on the covenant not to compete instead of the seven-year term, but Clark and his father would not agree. He claims it was a "take it or leave it agreement," and if he wanted to sell his interest in the company, he had to agree to the non-compete. The agreement was signed by all in August of 2005. The money was paid under the agreement.

After selling his portion of the company, Sutton remained employed with the company as a field supervisor for the local projects, which reduced the amount of travel he had previously done. In May of 2008, Sutton left Iowa Trenchless and

formed his own construction company, performing dirt work and underground utility work. Sutton claims at the time he left his employment with Iowa Trenchless, he had no interest in doing trenchless work. In 2009 and 2010 the construction industry dried up due to economic conditions, so Sutton went to work for Rognes Construction.

Sutton filed a declaratory judgment action in August of 2009, seeking to have the covenant not to compete declared unconscionable, unenforceable, and void. Iowa Trenchless filed its answer and asserted counterclaims against Sutton. Iowa Trenchless claimed the agreement was valid and enforceable, and claimed Sutton breached the terms of the agreement by attempting to hire Iowa Trenchless employees, contacting Iowa Trenchless customers, and working for a competitor of Iowa Trenchless.

Both parties filed motions for summary judgment, which were denied. The case proceeded to a bench trial on September 21, 2010. The district court filed its findings of fact and conclusions of law on November 24, 2010, granting declaratory relief to Sutton, striking down further enforcement of the covenant not to compete, and denying Iowa Trenchless's counterclaims in their entirety. Iowa Trenchless appeals claiming the district court erred in applying the wrong legal standard to the covenant not to compete, and asserting if the correct standard was applied, the covenant would be found enforceable. In addition, Iowa Trenchless claims Sutton breached the terms of the agreement.

**II. STANDARD OF REVIEW.** The parties disagree as to the appropriate standard of review. Iowa Trenchless asserts its claim that the district court applied the incorrect legal standard should be reviewed for correction of errors at law, but all other issues on appeal should be

reviewed de novo as Sutton filed the case in equity. Sutton contends that while he may have initially filed his declaratory judgment action in equity, a review of the case shows it was tried at law, and as such, should be reviewed for correction of errors at law.

We review declaratory judgment actions depending on how the action was tried to the district court. *Passehl Estate v. Passehl*, 712 N.W.2d 408, 414 (Iowa 2006). "[W]e consider the 'pleadings, relief sought, and nature of the case [to] determine whether a declaratory judgment action is legal or equitable.'" *Id.* (citing *Nelson v. Agro Globe Eng'g, Inc.*, 578 N.W.2d 659, 661 (Iowa 1998)). Whether the court ruled on evidentiary objections is also an important consideration, though it is not dispositive. *Id.*

While Sutton initially captioned his case in equity, a review of the trial transcript reveals the court ruled on multiple evidentiary objections throughout the two day trial. *Ernst v. Johnson Cnty.*, 522 N.W.2d 599, 602 (Iowa 1994) ("Where there is uncertainty about the nature of a case, a litmus test we use in making this determination is whether the trial court ruled on evidentiary objections."). The court's decision was captioned as "Findings of Fact, Conclusions of Law and Ruling," and not "decree" as is generally the case in equity actions. *Citizens Sav. Bank v. Sac City State Bank*, 315 N.W.2d 20, 24 (Iowa 1982). Iowa Trenchless did seek an injunction to enforce the covenant not to compete in its counterclaim, but "the fact that injunctive relief was sought is not dispositive of whether an action is at law or in equity, as an injunction may issue in any action." *Harrington v. Univ. of N. Iowa*, 726 N.W.2d 363, 365 (Iowa 2007). We find the case was tried as a law action below, and as such, our review is for cor-

rection of errors at law. We are bound by the district court's findings of fact if they are supported by substantial evidence. *Id.*

## III. COVENANT NOT TO COMPETE STANDARD.

Iowa Trenchless asserts this case involves an issue of first impression on the issue of whether the same strict construction rules for an employer-employee covenant not to compete also apply to covenants between business owners upon the sale of their business interest. Iowa Trenchless urges us to adopt a different, less-stringent standard, which would provide more deference to the contracts owners execute when selling their business interest. Sutton asserts the issue is not a matter of first impression, but that our court in *Rasmussen Heating & Cooling v. Idso,* 463 N.W.2d 703, 704 (Iowa Ct.App.1990), addressed the issue, and applied the same standard to owner-to-owner contracts as to employer-employee contracts. The district court agreed with Sutton and cited *Rasmussen* when it found a covenant not to compete between owners "is not examined under a different standard." While we agree with Sutton and the district court that the issue is not a matter of first impression in Iowa, we disagree that *Rasmussen* addresses the issue.[1]

While Iowa Trenchless believes this is a matter of first impression in Iowa, what both parties and the district court failed to ascertain is that Iowa has long held covenants not to compete between business owners as ancillary to a purchase agreement are viewed with more indulgence than covenants not to compete between employers and employees. *See Brecher v. Brown,* 235 Iowa 627, 631, 17 N.W.2d 377, 379 (1945), *overruled on other grounds by Ehlers v. Iowa Warehouse Co.,* 188 N.W.2d 368 (Iowa 1971). This added indulgence is due to the fact that in a business purchase agreement, the covenant not to compete adds value to the goodwill of the business being sold. *Id.* In addition, when an owner sells his business, the parties involved are presumed to be in a more equal negotiating position than employers and employees. *Id.* at 631–32, 17 N.W.2d at 379. A much greater "scope of restraint" is allowed between business owners. *Baker v. Starkey,* 259 Iowa 480, 491, 144 N.W.2d 889, 895 (1966). *See also Thomas v. Thomas Truck & Caster Co.,* 228 N.W.2d 52, 55 (Iowa 1975) ("In the sale-related covenant not to compete cases we do not apply a 'strict construction' as appellee asserts, but do hold the contract, being in restraint of trade and personal liberty, should not be construed beyond its fair import.").

█ Despite this added indulgence to uphold covenants not to compete that are a part of a business purchase agreement, the factors a court analyzes in determining whether a covenant not to compete is enforceable are the same. In *Lamp v. American Prosthetics, Inc.,* 379 N.W.2d 909, 910 (Iowa 1986), the court applied the following three-pronged test in an employee-employer covenant not to compete: "(1) [i]s the restriction reasonably necessary for the protection of the employer's business; (2) is it unreasonably restrictive to the employee's rights; and (3) is it prejudi-

---

1. While *Rasmussen* involved a covenant not to compete ancillary to a business purchase agreement, our court was not asked to address the standard of review for covenants between owners versus covenants between employers and employees. 463 N.W.2d 703, 704–05. It is not appropriate to use a case to establish a proposition that was not required to be decided in that case. *State v. Iowa Dist. Ct.,* 492 N.W.2d 666, 667 (Iowa 1992). Thus, while the issue of the standard of review in cases involving covenants not to compete ancillary to a business purchase agreement has been addressed by Iowa courts, it was not addressed in *Rasmussen.*

cial to the public interest?" These same factors were analyzed in *Haggin v. Derby*, 209 Iowa 939, 943, 229 N.W. 257, 259 (1930), where the court addressed an owner-to-owner covenant not to compete.

> [T]he true test is whether the restraint is such only as to afford a fair protection to the interest of the party in favor of whom it is given, and not so large as to interfere with the interests of the public. And the restriction must be reasonable, not oppressive, or out of proportion to the benefits which the vendee may, in reason, expect to flow from the restrictive features of the contract.

*Haggin*, 209 Iowa at 943, 229 N.W. at 259. Iowa Trenchless concedes that the same "reasonableness test" is applied to both employer-employee and owner-to-owner covenants not to compete. It is only the application of the test that is different.

While the district court was correct to apply the three-factor reasonableness test to the covenant at hand, we conclude the district court erred in concluding the analysis of an owner-to-owner covenant does not differ from the analysis of an employee-employer covenant. When applied to owner-to-owner covenants not to compete, the court grants a greater scope of restraint. *Baker*, 259 Iowa at 491, 144 N.W.2d at 895. This greater scope of restraint does not mean that all owner-to-owner covenants not to compete are enforceable. We still analyze each case to ensure the restriction is not wider in scope than the operation of the business and there is no other good reason to confine the restriction to narrower limits. *Uptown Food Store, Inc. v. Ginsberg*, 255 Iowa 462, 475, 123 N.W.2d 59, 67 (1963). Thus, we must look to see if the restraint of trade is reasonable to afford Iowa Trenchless sufficient protection, is not overly broad in its restriction of Sutton, and is not injurious to the general public.

**IV. APPLICATION OF COVENANT NOT TO COMPETE STANDARD.** The district court, in applying the three-pronged test from *Lamp*, found the seven-year and 350–mile radius overly broad for the protection of Iowa Trenchless. It concluded the remaining two years left on the covenant were unnecessary and found the majority of the projects completed by Iowa Trenchless since 2007 had been in Iowa and in the Kansas City, Missouri metropolitan area. The court also found the covenant unreasonably restricted Sutton's rights in both length and scope as he has been unable to utilize the specialized skill he had learned prior to his affiliation with Iowa Trenchless. Finally, the district court found upholding the covenant not to compete was prejudicial to public interest, because most of the trenchless construction work is conducted for public entities, and the public is particularly interested in having an additional bidder on public projects. The court concluded the covenant was unreasonable, unconscionable, and unenforceable as of the date of its ruling, which effectively shortened the term of the covenant by approximately 21 months.

Iowa Trenchless urges us to enforce the covenant under the less-stringent standard above. It asserts the 350–mile radius only covers the area that Iowa Trenchless actually performed services as seen in the map it provided to the district court. It also asserts the seven-year restriction is reasonable as the company was young when Sutton left, and the company needed to protect its goodwill and growing reputation. It also claims the covenant was needed to prevent Sutton from competing against it, particularly because Sutton was intimately familiar with the finances, customers, and inner working of the company. We agree.

Iowa courts have not considered the reasonableness of a covenant not to compete

as part of a sale of a business for many years, except in *Rasmussen* cited above. However, historically, so long as the covenant was limited to the area where the business actually performed services, it was upheld even if the time restriction was unlimited. *See Uptown Food Store,* 255 Iowa at 475–477, 123 N.W.2d at 67–68 (holding agreement not to compete contained in lease of property for a grocery store was enforceable, where lessor agreed not to engage in the food retail business within the city during the term of the lease and any renewals); *L.H. Henry & Sons v. Rhinesmith,* 219 Iowa 1088, 1090, 260 N.W. 9, 10 (Iowa 1935) (holding as enforceable an agreement between buyer and seller of a newspaper where seller agreed not to compete with buyer for fifteen years in the town where newspaper was located); *Haggin,* 209 Iowa at 946–47, 229 N.W. at 260 (enforcing an agreement between partners who were splitting up their business and agreed not to compete with each other so long as the other partner was still in the business in the town and surrounding area); *Swigert & Howard v. Tilden,* 121 Iowa 650, 662, 97 N.W. 82, 85 (1903) (holding an agreement for the sale of the goodwill of a shirt retail business was enforceable, where restriction provided for no competition for an unlimited period of time within 100 miles of Des Moines and for ten years in the states of Iowa and Nebraska); *Cole v. Edwards,* 93 Iowa 477, 480, 61 N.W. 940, 941 (1895) (finding an agreement for the sale of a medical practice to partner was enforceable, which restricted the seller from practicing in the town and in the immediately surrounding county indefinitely).

■ While Sutton asserts he was unable to negotiate the terms of the covenant, he did admit he consulted with his attorney about the covenant prior to executing the agreement. He stated he and his attorney pushed for a five-year term instead of seven. This proposal was rejected by both Clark and his father. Despite this rejection, Sutton still agreed to sign the covenant and accepted the full $200,000 contract price for his ownership interest in the company and his agreement not to compete. We find just because Clark and his father did not agree to Sutton's proposed five-year term, this does not mean the covenant was not negotiated. We do not find the seven-year term unreasonable.

■ Nor do we find the 350–mile geographic restriction unreasonable. Upon reviewing the exhibits submitted by the parties, it is clear the 350–mile radius covered only those areas where Iowa Trenchless had performed work. In fact, the 350–mile radius did not cover all jobs performed, as Iowa Trenchless did work in northern Minnesota and northern Wisconsin where the restriction did not extend. While no work was documented to have occurred in Illinois or western Indiana, if the geographic scope was reduced to exclude these areas, the reduced radius would not provide protection to Iowa Trenchless in areas it did perform jobs such as Wichita, Kansas, and Appleton, Wisconsin.

■ The district court found Iowa Trenchless presented no evidence as to why the covenant was still needed for the protection of its business for the remaining two years. The justification for the covenant is determined at the time the covenant was executed. *Ehlers,* 188 N.W.2d at 373 (stating an employer's burden to show the reasonable necessity of the covenant is ascertained when the employee left company). It is not Iowa Trenchless's burden to continually justify the covenant. So long as it was necessary and reasonable for the protection of the purchaser's business at

the time the covenant is executed, it is enforceable for the term of the contract.

■ The district court also found the covenant was an unreasonable restriction on Sutton's rights as the company Sutton formed after leaving Iowa Trenchless was rendered dormant due to economic conditions and Sutton's inability to use his trenchless skills. The poor economic conditions affected Sutton and Iowa Trenchless equally. Sutton started his business with the knowledge and understanding he would be unable to conduct trenchless activity for the term of the covenant. Just because Sutton's business venture failed, does not mean the covenant was unreasonably restrictive of Sutton's rights. In addition, at the time of trial, Sutton was gainfully employed with another company, Rognes Corporation; thus, the covenant did not "unnecessarily interfere with [Sutton] following any trade or calling for which he is fitted and from which he may earn his livelihood." *Iowa Glass Depot, Inc. v. Jindrich*, 338 N.W.2d 376, 383 (Iowa 1983).

■ We also find the public interest was not harmed by this covenant. The covenant did not result in a monopoly or even in a reduction in the number of companies that do trenchless construction. It simply prevented a new company from entering the marketplace. It is hard to see how the public would be harmed by this restriction. *See Swigert & Howard*, 121 Iowa at 659–60, 97 N.W. at 85 (stating where there is the substitution of one business owner for another, the interest of the general public is infinitesimal).

We find the covenant valid and enforceable considering the greater scope of restraint that is permitted in owner-to-owner covenants not to compete. We reverse the district court's decision granting Sutton's petition for declaratory relief, which found the covenant unreasonable, unconsciona-

ble, and unenforceable from November 22, 2010, and we remand to the district court to conduct a hearing to determine the amount of attorney fees Iowa Trenchless is entitled to recover for its efforts to support its claim that the covenant was enforceable.

**V. BREACH OF COVENANT NOT TO COMPETE.** We next turn to Iowa Trenchless's claim that the district court erred in its denial of its counterclaim that Sutton breached the covenant not to compete. Iowa Trenchless asserted Sutton violated the covenant by soliciting Iowa Trenchless employees Tyler Raye and Casey Kirk to work for Sutton, soliciting Iowa Trenchless customer, Duane Burkhardt, to perform trenchless services, and becoming employed by a competitor, Rognes Corporation.

The district court rejected Iowa Trenchless's claims finding Iowa Trenchless failed to present any evidence as to how it was damaged as a result of the alleged breaches. In addition, with respect to the claim involving the employment of Casey Kirk, the court found both Sutton and Kirk testified Kirk was fired by Iowa Trenchless before he went to work for Sutton, and the court found Kirk made first contact with Sutton. Therefore, the court concluded Sutton did not solicit Kirk, which would have been a violation of the covenant. With respect to Duane Burkhardt, the court found Burkhardt's testimony regarding the conversation he had with Sutton differed substantially from Sutton's testimony. Sutton claimed to have never asked Burkhardt for trenchless work. As a result of this conflict in testimony, the court found Iowa Trenchless failed to carry its burden to prove Sutton breached the covenant not to compete.

Finally, the district court found Iowa Trenchless failed to offer any evidence,

besides Clark's own assumptions, to prove Rognes Corporation was a competitor of Iowa Trenchless. It found there was no evidence Rognes Corporation was submitting bids on trenchless work. Rognes Corporation company owner, Warren Rognes, testified the company had not bid for trenchless work in over a year. The district court also found that the covenant required Sutton to actually do trenchless work for a competitor before the covenant would be breached. Sutton testified he only works on open trench projects for Rognes. Therefore, the court found no breach with respect to Sutton's employment with Rognes Construction.

 Despite the lack of proof to demonstrate it sustained any damages as a result of the alleged breaches, Iowa Trenchless asserts it should still be able to recover because the covenant not to compete provided for the recovery of attorney fees. The covenant states,

If I, Michael Jon Sutton, violate this non-compete agreement, Iowa Trenchless, L.C. may seek injunctive relief and/or any other remedy allowed by law, and collect reasonable attorneys' fees and costs incurred in enforcing the terms of this non-compete agreement.

While the contract does provide for the payment of attorney fees, these fees are only payable if Iowa Trenchless is successful in enforcing the terms of the non-compete. If Iowa Trenchless is not successful, it is not entitled to attorney fees. Thus, before we can award attorney fees on the counterclaim, we must determine whether the district court erred in finding Iowa Trenchless failed to meet its burden of proof that Sutton breached the covenant.

 In asserting its breach-of-contract claim, Iowa Trenchless had to prove: (1) the existence of a contract, (2) the terms and conditions of the contract, (3) that [plaintiff] has performed all the terms and conditions required under the contract, (4) the defendant's breach of the contract in some particular way, and (5) that plaintiff has suffered damages as a result of defendant's breach.

*Royal Indem. Co. v. Factory Mut. Ins. Co.*, 786 N.W.2d 839, 846 (Iowa 2010). Offering evidence of damages is essential to proving a claim for breach of contract. Clark, on behalf of Iowa Trenchless, testified during cross-examination that he could not provide the court with any dollar figure in lost profits that resulted from Sutton's alleged breaches. Clark did assert he had to hire and train a new employee to replace Casey Kirk, but offered no evidence from which the court could have ascertained the amount of damages sustained as a result of Sutton's alleged breach.

We find substantial evidence supports the district court's conclusion Iowa Trenchless failed to carry its burden to prove Sutton breached the covenant. Iowa Trenchless offered no evidence to support a claim for damages, which is an essential element of a breach of contract claim. Thus, Iowa Trenchless is not entitled to recover attorney fees incurred in its attempt to prove its breach-of-contract counterclaim. However, as stated above, Iowa Trenchless is entitled to recover the attorney fees it incurred in establishing that the terms of the covenant are enforceable. Thus, this case must be remanded for a hearing on the amount of attorney fees Iowa Trenchless is entitled to recover. We do not retain jurisdiction.

**REVERSED AND REMANDED.**