**IN THE COURT OF APPEALS OF IOWA**

No. 16-1639
Filed September 13, 2017

**TIMOTHY T. BRADSHAW,**
      Plaintiff-Appellant/Cross-Appellee,

**vs.**

**CEDAR RAPIDS AIRPORT COMMISSION,**
      Defendant-Appellee/Cross-Appellant.
_____

      Appeal from the Iowa District Court for Linn County, Kevin McKeever,

Judge.


      Employee appeals and employer cross-appeals from summary judgment

ruling in breach of contract action.  **AFFIRMED ON APPEAL; REVERSED IN**

**PART AND REMANDED WITH DIRECTIONS ON CROSS APPEAL.**



      Matt J. Reilly of Eells & Tronvold Law Offices, P.L.C., Cedar Rapids, for

appellant.

      Benjamin P. Roach of Nyemaster Goode, P.C., Des Moines, for appellee.


      Considered by Mullins, P.J., and Bower and McDonald, JJ.

**MCDONALD, Judge.**

Timothy Bradshaw sued his former employer, the Cedar Rapids Airport Commission, for breach of contract. Bradshaw contended the Commission owed him severance pay pursuant to an employment agreement. On cross-motions for summary judgment, the district court held Bradshaw was not entitled to severance pay but was entitled to compensation for an additional month of service. Bradshaw appeals, contending the district court erred in holding Bradshaw was not entitled to contractual severance pay. The Commission cross-appeals, contending the district court erred in holding Bradshaw was entitled to additional compensation.

I.

Bradshaw served as the Airport Director for the Eastern Iowa Airport. The airport is owned by the City of Cedar Rapids and operated by the Cedar Rapids Airport Commission. In 2012, Bradshaw and the Commission entered into an amended employment agreement.

Several provisions of the agreement are relevant to this appeal. Paragraph 1 of the agreement sets forth the general terms of employment:

> The Commission hereby employs Bradshaw for an indefinite term as Airport Director effective as of June 28, 2012. . . . Such employment shall end upon Bradshaw's resignation, death or termination for any reason by the Commission. Should Bradshaw voluntarily resign his employment prior to contract expiration, his notice of resignation shall be tendered to the Commission no less than [thirty] days prior to his departure date in order to assure his status as resigning in good standing. Nothing in this Amended Agreement shall be deemed to prevent or limit the right of the Commission to determine that Bradshaw shall no longer serve as Airport Director, subject to provisions of Paragraph 3 of this Amended Agreement.

Paragraph 3 of the agreement provides for severance pay:

> In the event Bradshaw is involuntarily terminated by the Commission for any reason other than his death, conviction of a felony, aggravated misdemeanor, or any public offense involving corruption, extortion, willful misconduct, maladministration in office, willful or habitual neglect, or refusal to perform the duties of office, he shall receive severance pay in the amount of twelve months' salary in effect at the time of Bradshaw's termination.[1]  Such severance pay shall be paid to Bradshaw, at his election, either in one lump sum within thirty (30) days of his effective date of termination [sic].  Provided however that in the event the Commission terminates Bradshaw's employment on the basis of willful or habitual neglect, or refusal to perform the duties of office, in order to avoid payment of severance pay, the Commission must have first provided written notice of such basis and provided Bradshaw a reasonable opportunity to correct such basis.

And paragraph 13 of the agreement provides the agreement "represents the full and complete understanding and agreement of the parties."

The circumstances surrounding the cessation of Bradshaw's employment are not in dispute.  On September 2, 2014, Bradshaw informed two commissioners he had a pending job offer.  Bradshaw requested a salary increase, and he informed some of the commissioners he would resign if the increase was not approved.  The commissioners informed Bradshaw they did not have the authority to approve a salary increase without a vote of the full commission and, in any event, they would not recommend a salary increase.

On September 3, Bradshaw emailed his resignation to the Commission. The email stated, "After careful consideration, I have decided to resign my position here at the Eastern Iowa Airport."  The email went on to say, "My last date of employment will be November 3, 2014.  Of course I will be available beyond that date for any transitional issues that may arise."

---

[1] At the time Bradshaw's employment ended, his salary was $161,241.

One of the commissioners emailed a response to Bradshaw:

> On Friday morning, the Commission will hold a special meeting to accept your resignation with a pay-through date [thirty] days thereafter which should be October 5, 2014. . . . As I communicated via our phone call earlier today, I believe that it would be in everyone's best interests for this Friday (9/5) to be your last day in office. I am sure you will be available by phone or email after that to answer any questions, etc.

On September 5, the Commission passed a resolution accepting Bradshaw's resignation. The resolution provided, among other things, "Tim Bradshaw's resignation as Airport Director of the Eastern Iowa Airport is hereby accepted to be effective 30 days from the date of this Resolution."

After the end of Bradshaw's service, the parties had minimal contact. Bradshaw filed a claim for unemployment compensation benefits. At the fact-finding hearing, Bradshaw agreed he had resigned, agreed the Commission had accepted his resignation effective October 5, and agreed the Commission paid his salary and benefits through October 5. Bradshaw subsequently withdrew the claim for benefits. In February 2015, Bradshaw sent a demand letter to the Commission, requesting twelve months' severance pay as set forth in the employment agreement. The Commission declined to pay severance, taking the position Bradshaw had resigned his employment.

Shortly after the Commission denied Bradshaw's request for severance pay, Bradshaw filed this suit for breach of contract. The suit was resolved on cross-motions for summary judgment. Bradshaw's position was he resigned his employment effective November 3 and the airport involuntarily terminated his employment prior to that date, on October 5. He thus concluded he was entitled to the contractual severance payment. The Commission's position was

Bradshaw voluntarily resigned his employment and the Commission accepted the resignation. The last date Bradshaw actually was on the payroll, the Commission argued, did not change the nature of his separation from a voluntary resignation to an involuntary termination. In addition, the Commission contended Bradshaw's claims were barred by the doctrines of estoppel and accord and satisfaction.

The district court granted in part and denied in part each motion. The district court held Bradshaw voluntarily resigned his employment and was not entitled to severance pay under the terms of the employment agreement. The district court reasoned "the mere acceleration of the departure date does not alter the voluntary nature of [Bradshaw's] resignation." The district court explained:

> To put [it] differently, the nature of the leave is defined the moment an employee tenders a notice of resignation, i.e., when he or she sets in motion the chain of events which ultimately resulted in the separation. In the current action, the defining moment was when [Bradshaw] emailed all the Commissioners about his decision to leave. By doing so, he set in motion a chain of events that ultimately resulted in his separation from the Commission.

Although the district court held Bradshaw was not entitled to severance pay under the terms of the employment agreement, the district court also held Bradshaw was entitled to additional compensation for the period October 5, the date of separation, through November 3, the date identified in Bradshaw's notice. The parties stipulated the compensation for this period was $13,023.36, and the district court entered judgment in favor of Bradshaw for this amount.

## II.

Our review of the district court's summary judgment ruling is for the correction of legal error. *See Pillsbury Co. v. Wells Dairy, Inc.*, 752 N.W.2d 430,

434 (Iowa 2008). Summary judgment should be granted only "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Iowa R. Civ. P. 1.981(3). The court views the summary judgment record in the light most favorable to the party resisting the motion for summary judgment and indulges in every legitimate inference the evidence will bear in an effort to ascertain the existence of a genuine issue of fact. *See Crippen v. City of Cedar Rapids*, 618 N.W.2d 562, 565 (Iowa 2000).

"A fact is material if it will affect the outcome of the suit, given the applicable law." *Parish v. Jumpking, Inc.*, 719 N.W.2d 540, 543 (Iowa 2006). An issue of fact is "genuine" if the evidence would allow a reasonable jury to return a verdict for the nonmoving party. *See Fees v. Mut. Fire & Auto. Ins. Co.*, 490 N.W.2d 55, 57 (Iowa 1992). If the summary judgment record shows that the "resisting party has no evidence to factually support an outcome determinative element of that party's claim, the moving party will prevail on summary judgment." *Wilson v. Darr*, 553 N.W.2d 579, 582 (Iowa 1996); Iowa R. Civ. P. 1.981(3). In addition, summary judgment is correctly granted where the only issue to be decided is what legal consequences follow from otherwise undisputed facts. *See Emmet Cty. State Bank v. Reutter*, 439 N.W.2d 651, 653 (Iowa 1989).

III.

We first address the issue of whether Bradshaw is entitled to severance pay under the terms of the employment agreement. The relevant law regarding the interpretation and construction of contracts is well-established:

> Interpretation is the process for determining the meaning of the words used by the parties in a contract. Interpretation of a contract is a legal issue unless the interpretation of the contract depends on extrinsic evidence. On the other hand, construction of a contract is the process a court uses to determine the legal effect of the words used. We always review the construction of a contract as a legal issue.

*Pillsbury Co.*, 752 N.W.2d at 435–36 (citations omitted).

In this case, the employment agreement provided Bradshaw would be entitled to severance pay if the Commission "involuntarily terminated" his employment. The employment agreement does not define the term. However, the words have a commonly accepted meaning. "Involuntarily" generally means against one's will or a status "[n]ot resulting from a free and unrestrained choice." *Involuntary*, Black's Law Dictionary (10th ed. 2014.); *cf. Bartelt v. Emp't Appeal Bd.*, 494 N.W.2d 684, 686 (Iowa 1993) ("We understand voluntary to entail a free choice."). Generally, termination of employment is the "complete severance of an employer-employee relationship." *Termination of employment*, Black's Law Dictionary (10th ed. 2014). It means "something more than that the employee stopped work or the employer stopped paying him." *Edwards v. Equitable Life Assur. Soc.*, 177 S.W.2d 574, 577 (Ky. 1944). It requires the intention by the employer or the employee to sever the employment relationship combined with conduct sufficient to communicate the intent to sever the employment relationship. *See id.*; *see also Irving v. Emp't Appeal Bd.*, 883 N.W.2d 179, 209 (Iowa 2016) (recognizing non-volitional, unexpected incarceration did not render termination voluntary, but noting incarceration set in motion by volitional acts could). The language of the employment agreement thus provides the Commission was required to pay severance only if the Commission took action to

completely sever the employment relationship with Bradshaw against Bradshaw's will.

The wrinkle presented in his case is that there is no dispute Bradshaw intended to voluntarily terminate his employment. There is also no dispute the Commission accepted the resignation. The question presented, the question of construction, is whether accelerating the effective date makes a voluntary termination an involuntary termination within the meaning of the contract. There is no controlling authority to resolve the issue.

The authority that most directly addresses the question involves cases relating to the payment of unemployment compensation benefits. The general rule in unemployment compensation benefits cases appears to be that when an employee gives notice of resignation and the employer terminates the employment relationship prior to the end of the notice period, the employee is not disqualified from receiving unemployment compensation benefits at least through the end of the notice period. *See, e.g., Porter v. Florida Unemployment Appeals Comm'n*, 1 So. 3d 1101, 1103–04 (Fla. Dist. Ct. App. 2009) (collecting cases). By analogy, so the argument goes, Bradshaw should also be entitled to his severance pay.

The argument by analogy seems appealing, but the unemployment compensation cases are largely immaterial to this case. First, unemployment compensation cases have a different decision calculus than contract cases. Unemployment compensation laws are to be liberally construed in favor of the employee. *See Bridgestone/Firestone, Inc. v. Empl't Appeal Bd.*, 570 N.W.2d 85, 96 (Iowa 1997) ("The purpose of our unemployment compensation law is to

protect from financial hardship workers who become unemployed through no fault of their own. We are to construe the provisions of that law liberally to carry out its humane and beneficial purpose."). There is no similar interpretive framework to be applied in contract cases in favor of the employee. Instead, we are to interpret and construe the contract in accord with the parties' intent as evidenced by the language used in the agreement. *See Home Fed. Sav. & Loan Ass'n v. Campney*, 357 N.W.2d 613, 617 (Iowa 1984).

Second, the question presented in unemployment cases is decidedly different from the question presented here. In unemployment compensation cases, the relevant question is not the distinction between resignation and involuntary termination per se. Instead, the relevant question is whether the employee is disqualified from the receipt of benefits. *See, e.g., Bd. of Educ. v. Gray*, 806 S.W.2d 400, 402–03 (Ky. Ct. App. 1991) ("The system's sole function is to determine whether or not the affected employee meets the statutory criteria to qualify for benefits, not to inquire or make any judgments regarding the reasons behind an employee's termination. Other jurisdictions have recognized this critical distinction, and we concur with their reasoning."); *Shelton v. Oscar Mayer Foods Corp.*, 481 S.E.2d 706, 708 (S.C. 1997) (stating "the narrow issue the [Employment Security Commission] decides is simply whether the claimant is qualified to receive employment benefits"). The disqualification question frequently turns on statutory or regulatory authority defining a voluntary termination for the purposes of receipt of benefits. For example, Iowa Administrative Code section 871-24.25(38) explicitly provides an employee shall not be disqualified from the receipt of unemployment compensation benefits for

the remainder of the notice period when the employer discontinues employment prior to the end of the notice period.

The mere fact that many states, including Iowa, have implemented statutes and regulations broadly extending unemployment compensation benefits to employees has no bearing on the issue of whether an employee was "involuntarily terminated" within the meaning of the parties' employment agreement. Indeed, the public policy underlying unemployment compensation is so distinct from civil litigation that many states deny preclusive effect to unemployment compensation proceedings. *See, e.g., Powers v. Arachnid, Inc.,* 617 N.E.2d 864, 868–69 (Ill. App. Ct. 1993) ("Although the parties are the same in plaintiff's claim for unemployment compensation and for breach of the severance agreement, the causes of action are not identical . . . . The facts necessary to sustain a favorable judgment for breach of the severance agreement would be that the parties agreed to give plaintiff severance pay under certain terms and conditions, that those conditions were met, and that defendant failed to perform under the terms of the agreement. This evidence would not have sustained nor been material to a judgment for unemployment compensation."); *Gray*, 806 S.W.2d at 403; *Olivieri v. Y.M.F. Carpet, Inc.*, 897 A.2d 1003, 1014 (N.J. 2006) (holding "collateral estoppel effect is to be denied to unemployment compensation determinations" and collecting cases); *Shovelin v. Cent. N.M. Elec. Co-op, Inc.*, 850 P.2d 996, 1004–05 (N.M. 1993) (holding the doctrine of collateral estoppel would not preclude plaintiff-employee from relitigating the nature of his separation from employer following adverse decision regarding unemployment compensation benefits because of, among other things,

the remedial legislative purpose underlying unemployment compensation law); *Distelzweig v. Hawkes Hosp.*, 518 N.E.2d 43, 46 (Ohio Ct. App. 1986) ("Although the board properly denied plaintiff unemployment compensation because she was discharged for 'just cause' within the meaning of the unemployment compensation law, a reasonable interpretation of the employment contract raises genuine issues of material fact as to whether the employer breached the employment contract and was liable for corresponding damages."); *Rue v. K-Mart Corp.*, 691 A.2d 498, 501 (Pa. 1997) (examining public policy underlying unemployment compensation and civil litigation and concluding application of estoppel was not warranted).

In the absence of any controlling or persuasive authority, we conclude the Commission did not involuntarily terminate Bradshaw's employment within the meaning of the employment agreement. Without prompting from the Commission, Bradshaw emailed his resignation to the Commission, stating, "I have decided to resign my position here at the Eastern Iowa Airport." Two days later, the Commission formally accepted the resignation. It was Bradshaw who intended to completely sever the employer-employee relationship and who communicated his intent to completely sever the employer-employee relationship. The fact the parties disagreed on the last day Bradshaw would be in the office and the last day of his employment—Bradshaw requesting November 3, and the Commission authorizing October 5—is immaterial to the question of who took action to sever the relationship. It seems to us who caused the discontinuance of the employment relationship is a different question from

when the employment relationship discontinued, at least within the meaning of this contract.

Our conclusion best gives effect to the parties' intended purpose. *See Home Fed. Sav. & Loan Ass'n*, 357 N.W.2d at 617 ("The purpose of contract interpretation is to ascertain the intent of the contracting parties at the time the contract was made."); *Haggin v. Derby*, 229 N.W. 257, 260 (Iowa 1930) ("Another well-recognized rule of construction of contracts is that it is the duty of the court to place itself, as nearly as may be, in the situation of the parties at the time of the making of the contract, so as to view the circumstances as the parties viewed them. The court should consider the nature of the agreement itself, together with all the facts and circumstances leading up to and attending its execution, the relation and condition of the parties, the nature and situation of the subject– matter, and the apparent purpose of making the contract."). The entirety of paragraph 3 of the agreement evidences the parties' intent to provide Bradshaw with additional compensation in the event the Commission decided to terminate his employment against his will (and not for any disqualifying reason) where he could potentially find himself unemployed or underemployed. There is nothing in the text of paragraph 3 or any other provision of the employment agreement that evidences the severance pay provision was intended to provide Bradshaw with bonus or additional compensation in the event he accepted other employment and resigned his employment with the Commission.

Our conclusion also provides reciprocal protection for each party's interest in achieving a fair, practical result. We have concluded Bradshaw was not "involuntarily terminated" when he resigned and the Commission accepted the

resignation but with a different effective date. Consider the converse situation. Imagine the Commission communicated to Bradshaw it intended to terminate his employment (and not for any disqualifying reason) effective in sixty days. In response, Bradshaw commenced a search for employment, found a new position, and told the Commission he would not work the last thirty days of the notice period because he was going to commence employment in his new position. In that case, we would not conclude Bradshaw voluntarily resigned his employment because he did not continue to work through the notice period after the Commission already informed him it intended to terminate the employment relationship regardless. Instead, we would say the employer involuntarily terminated Bradshaw's employment even though Bradshaw voluntarily left employment prior to the end of the notice period.

Our conclusion also comports with common sense and practical reason. The law "cannot be dealt with as if it contained only the axioms and corollaries of a book of mathematics." Oliver Wendell Holmes, Jr., The Common Law 1 (Dover ed. 1991). "[T]he secret root from which the law draws all the juices of life" are considerations of expediency and practicality. *Id.* at 35. It defies practical sense to conclude the Commission owes severance pay to Bradshaw under the circumstances presented. Bradshaw is asking that we "sacrifice good sense to a syllogism." *Id.* at 36. We decline to do so.

For the foregoing reasons, we conclude the district court did not err in granting the Commission's motion for summary judgment and in denying Bradshaw's cross motion for summary judgment on the issue of whether Bradshaw was entitled to severance pay under the terms of the employment

agreement. The agreement provided Bradshaw would be entitled to severance pay only where the Commission "involuntarily terminated" his employment. It is not disputed Bradshaw intended to completely sever the employment relationship and communicated his resignation via email. It is also not disputed that Commission accepted Bradshaw's resignation. For the purposes of contract interpretation and construction, it is immaterial the parties disagreed on the effective date of the resignation. As a matter of law, Bradshaw was not "involuntarily terminated" within the meaning of the employment agreement.

IV.

We next address the question of whether the district court erred in holding Bradshaw was entitled to compensation for the remainder of the notice period. We conclude the district court did err. Bradshaw resigned his employment with the Commission. The Commission decided Bradshaw's last date of employment was October 5, 2014, and the Commission paid Bradshaw through that date. There is no legal basis for concluding Bradshaw is entitled to additional severance or compensation from the employer beyond his last date of employment. No statute provides for it. Nothing in the employment agreement provides for it. Bradshaw concedes in his reply brief that he is not entitled to compensation for the additional month.

Even if Bradshaw had not conceded the issue, to conclude to the contrary creates an untenable result. It would allow for an employee to change his or her status from employed-at-will to employed-for-a-definite-term by simply including an effective date in a notice of resignation. In this case, Bradshaw gave sixty days' notice, and the district court held he was thus entitled to sixty days'

compensation, without regard to whether he was employed or not. What then stops an employee from giving six months' or nine months' notice? An employee cannot guarantee himself or herself compensation from an employer for a particular term by simply providing notice of his or her resignation to occur at some future date. The district court erred in holding otherwise.

V.

For the foregoing reasons, we affirm in part and reverse in part the judgment of the district court. We conclude the district court did not err in holding Bradshaw was not entitled to severance pay under the terms of the employment agreement. We conclude the district court did err in holding Bradshaw was nonetheless entitled to compensation. We remand this matter with instruction to vacate the judgment in favor of Bradshaw and against the Commission and for entry of judgment dismissing Bradshaw's claim. Because we have resolved this case on other grounds, we need not address the Commission's arguments regarding estoppel and accord and satisfaction.

**AFFIRMED IN PART, REVERSED IN PART, AND REMANDED WITH DIRECTIONS ON CROSS APPEAL.**

Bower, J., concurs; Mullins, P.J., partially dissents.

**MULLINS, Presiding Judge.** (concurring in part and dissenting in part)

I concur in so much of the majority opinion that concludes as a matter of law Bradshaw voluntarily resigned and was not terminated.

I respectfully dissent from the part of the opinion that reverses the district court's order compensating Bradshaw to November 3, 2014. The contract provided "his notice of resignation shall be tendered to the Commission no less than 30 days prior to his departure date." Bradshaw complied with the terms of the contract. The contract could have provided a strict thirty-day notice, but it did not. The contract gave Bradshaw the right to select a voluntarily resignation date of "no less than 30 days." He did that. Although I would agree a reasonableness clause could be interpreted to apply to the selection of a termination date—a date fixed far in the future might under some circumstances be interpreted unenforceable—that is not the case here and is not part of the majority's analysis. I find nothing in the contract or the case law that gave the Commission the authority to unilaterally decide to change the voluntary resignation date.

As a matter of contract analysis and enforcement, I would find Bradshaw is entitled to compensation through his announced effective resignation date. I would deny the Commission's cross-appeal and affirm the district court.